Mary E. B. McCloskey and Ralph A. McCloskey, Plaintiffs, v. William J. McKelvey, III, Defendant.

(*May* 3, 1961.)

STIFTEL, J., sitting.

*David B. Coxe, Jr.* (of Coxe, Booker, Walls and Cobin) for plaintiffs.

*F. Alton Tybout* (of Prickett, Prickett and Tybout) for defendant.

Superior Court for New Castle County, No. 536, Civil Action, 1959.

STIFTEL, J.:

This cause is before the Court on motion of plaintiffs for a new trial,[1] made after the verdict of the jury for the defendant.

---

[1]Pursuant to Superior Court Rule 59(a), *Del. C. Ann.,* which is similar to Rule 59, Federal Rules of Civil Procedure, 28 *U. S. C. A.,* and which reads as follows:

"A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial for any of the reasons for which new trials have heretofore been granted in actions at law in the Superior Court. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, and direct the entry of a new judgment."

The action was brought by plaintiffs to recover damages growing out of the collision of two automobiles. The accident occurred on the inside lane of the three-lane Du Pont Highway (Route 13), northbound, where Roosevelt Avenue, Wilmington Manor, crosses the Du Pont Highway at right angles.

At the point where Roosevelt Avenue enters the Du Pont Highway from the east, there is a stop sign. On July 20, 1958, at approximately 8:45 P.M., defendant came to a stop at the stop sign. The traffic on the Du Pont Highway was heavy. The intersection was blocked and appeared impassible. The defendant lighted a cigarette and waited for an opportune time to cross the three northbound lanes to the paved area which cut through the grass divider between the north and south bound lanes, intending to proceed in a southerly direction on the Du Pont Highway.

Defendant testified that vehicles were stopped in the outside and middle lanes of traffic to the south of the intersection from the southerly curbline of Roosevelt Avenue and that he saw no traffic on the inside lane. He stated that traffic north of the intersection was stopped on all three lanes and was backed up from a traffic light two intersections north of Roosevelt Avenue on the Du Pont Highway. He claimed that the rear end of the automobiles in the outside and middle lanes north of the intersection was about a foot or two ahead of the extended northerly curbline of Roosevelt Avenue. The inside lane of traffic was also backed up and the rear of the car on this lane nearest the intersection extended into the intersection of Roosevelt Avenue on the north side.

Defendant claimed that the drivers in the two stopped cars on the outside and middle lanes south of the intersection indicated to the defendant by hand signal that he could cross the highway. At the time defendant started to cross the highway he stated that he could see down the inside lane to the south approximately 50 to 70 feet or about three or four car lengths, and that he saw no traffic coming from the south on

the inside lane. He said he was able to see through the space between cars backed up on the two easterly lanes to the south. Defendant claims that as he started across the highway, the car which was backed up into the intersection moved forward to a limited extent to permit him to get through. He then claims that as he was starting to enter the inside lane of traffic at a point where his windshield was even with the dividing line which runs between the inside and middle lanes, he again looked south on the inside lane and did not see any cars. He states that at this point he could see in a southerly direction approximately 100 feet or "down to the gas station", and that he was traveling at a speed between 0 and 15 miles per hour. He then claims that he looked forward in the direction in which he was going and then the accident occurred. He did not see plaintiff driver's automobile until the time of the collision or immediately prior thereto. At the time of the collision the front wheels of defendant's automobile were on the edge of the apron of the crossover. Defendant claims that plaintiff driver's automobile was traveling between 20 and 30 miles per hour.

Plaintiff driver contends that he was proceeding north on the Du Pont Highway on the inside lane at a speed of 25 to 30 miles an hour. He claims that the automobiles in each of the two lanes to his right immediately prior to impact were close to each other and moving at a slow rate of speed. He explains that the traffic in his lane was not heavy and that at the time he and his wife approached the southerly curbline of Roosevelt Avenue, the car ahead of them in their lane was at least 50 feet away and moving. He then claims that defendant's car appeared suddenly in front of him without warning and that he swerved to the left and struck the defendant's car on the left front fender and door. The defendant's car was pointed straight across the highway at the time of impact.

No motion was made by plaintiffs for a directed verdict. Plaintiffs explain that the request was not made for tactical

reasons. Plaintiffs argue that this Court should grant a new trial, pursuant to Rule 59, to prevent a miscarriage of justice.

The Superior Court has ample power to grant a new trial to prevent injustice. *Gatta v. Philadelphia, B. & W. R. Co.*, 2 *Boyce* 551, 83 *A.* 788; *Woolley on Del. Practice*, § 733. Rule 59 of the Superior Court Rules recognizes this principle. *Tsai v. Rosenthal, D. C. Pa.*, 26 *F. R. D.* 393, 394. In passing on this motion, the Judge must weigh the evidence in order to determine if the verdict was one which might have reasonably been reached. *Miller v. Pacific Mutual Life Ins. Co., D. C. Mich.*, 17 *F. R. D.* 121. In contradistinction, when the Judge considers a motion to direct a verdict he is not required to weigh the evidence. Instead, he views the evidence most favorable to the party against whom it is moved, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, he determines whether or not, under the law, a verdict might be found for the party having the burden. If not, the Judge should, upon the ground that the evidence is insufficient in law, direct a verdict against that party. *Mt. Adams & E. P. Inclined R. Co. v. Lowery*, 6 *Cir.*, 74 *F.* 463, 477; *Felton v. Spiro*, 6 *Cir.*, 78 *F.* 576, 582. On a motion to grant a new trial the verdict must be manifestly and palpably against the weight of the evidence or for some reason, or a combination of reasons, justice would miscarry if it were allowed to stand. *Eastern Air Lines Inc. v. Union Trust Co.*, 99 *U. S. App. D. C.* 205, 239 *F.* 2d 25; *Wade v. Lane, D. C. D. C.*, 189 *F. Supp.* 661, 663; 6 *Moore's Federal Practice* 3818-19; 3 *Barron & Holtzoff, Federal Practice and Procedure* § 1304. It is not a sufficient ground for a new trial that the verdict is merely against the preponderance of the testimony, or that the Court may have arrived at a different result. *Weed v. Lyons Petroleum Co., D. C. Del.*, 294 *F.* 725, 733.

Judge Parker, in *Garrison v. United States*, 4 *Cir.*, 62 F. 2d 41, at page 42, expressed his view on questions of new trials as follows:

"There seems to be some confusion on the part of counsel as to the difference between the duty to direct a verdict and the duty to grant a new trial after verdict; and the contention is frequently made that the judge should direct a verdict whenever the evidence is such that he would be justified in setting the verdict aside. The distinction, however, is clear. Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice."

An excellent explanation of this subject matter is made by Judge Holtzoff in *Miller v. Pennsylvania Railroad Co.*, *D. C. D. C.*, 161 *F. Supp.* 633, 640-641, wherein he states:

"There is a clear distinction in principle between a motion for a directed verdict and a motion for a new trial on the ground that the verdict is against the weight of evidence,— a distinction that is sometimes misunderstood or overlooked. A verdict may be directed only if, as a matter of law, on the evidence presented the moving party is entitled to judgment in its favor. A motion for judgment notwithstanding the verdict may, of course, be granted only if a verdict in favor of the moving party should have been directed at the close of the entire case. On the other hand, the court may conclude

that an issue of fact exists requiring the submission of the question to the jury as a matter of law, and yet upon a return of the verdict may find that the verdict was contrary to the weight of evidence. In such a situation the court may grant a new trial. Manifestly the consequences of these two courses are entirely different. A directed verdict . or judgment notwithstanding the verdict results in a final disposition of the case. An order granting a new trial, as its very name indicates, merely leads to a re-trial before another jury. If two juries reach the same result, a court would naturally hesitate to require a further scrutiny of the issues by a third jury. The actual effect of this procedure consists of a check made by a second jury of the determination made by the first jury.

"Obviously, on a motion for a new trial on the ground that the verdict is against the weight of the evidence, the power of the court is much broader than on a motion for a directed verdict, or for judgment notwithstanding the verdict. On such an application the court may weigh the evidence. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. Manifestly this authority should be exercised sparingly and cautiously. It should be invoked only in cases in which the evidence preponderates heavily against the verdict. Nevertheless recourse should be had to it, if the ends of justice so require."

The law of this State does not require a driver on a through highway to reduce his speed before he reaches an inferior crossing in order to ascertain whether a driver on the inferior road will obey the law pertaining to a "stop sign". Our Supreme Court, in *Williams v. Chittick*, 1 *Storey* 122, 139 *A.* 2d 375, explained that unless the driver on the through highway has some warning of danger likely to occur at such intersection, he need not reduce his speed. However, the Court stated (139 *A.* 2d at page 378):

"This does not mean that he does not have to keep such lookout as a reasonably prudent person would do in order to discover possible danger or to act carefully under existent conditions. Of course, cases may arise where under certain circumstances the driver on a favored road may be guilty of negligence contributing to the accident. But he is not required to slow down in anticipation of danger which has not become apparent."

A driver who comes to a stop at a stop sign pursuant to Section 4143(b), Title 21, *Delaware Code*, must refrain from negotiating the intersection until he can do so with safety. In *Rumble v. Lingo*, 1 *Storey* 417, 147 *A.* 2d 511, this Court stated that the driver on the inferior highway must maintain a continual vigilance and such control over his vehicle so that he may avoid immediate hazards of approaching traffic while crossing the favored highway. The *Rumble* case then lays down the following principle (147 *A.* 2d at page 513):

"The fact that a plaintiff operator does enter an intersection and is involved in a collision within the danger area thereof with a motor vehicle travelling in the favored traffic pattern raises a conclusive presumption of contributory negligence on his part except (1) where the evidence discloses the occurrence of an unforseeable circumstance which is beyond the control of the operator, or (2) where the plaintiff has pleaded the last clear chance doctrine and the evidence is sufficient to admit the same."

Now, to proceed to a discussion of the principal case in relation to the foregoing rules of law. The plaintiff driver was on the arterial highway and was entitled to assume that subordinate drivers would allow him the right of way. At the same time, however, Mr. McCloskey, as the favored driver, was not relieved from conforming to the standard that he should exercise reasonable care for his own protection. In other words, McCloskey, even though he was the favored driver, was not

permitted to charge blindly into an intersection blocked by vehicles on the theory that such was his right simply because he was the favored driver. He was required to exercise reasonable care under the circumstances. *McGuire v. Rabaut*, 354 *Mich.* 230, 92 *N. W.* 2d 299.

■ The circumstances confronting Mr. McCloskey were unusual and unnatural. There were cars to his right on the middle and outside lanes of the Du Pont Highway blocking his vision of the intersection and according to the testimony of the defendant, there was a stopped vehicle only a few feet in front of him which was bound to block his forward movement. Plaintiff driver and defendant indicated that there were cars backed up from the traffic light for some distance on the middle and outside lanes of the Du Pont Highway. With traffic in such a chaotic condition, the plaintiff driver should have been aware of the possibility that an unusual incident could occur at this open intersection where cars north and south of the intersection on five lanes were stopped with sufficient room for a vehicle to cross the highway. The vision of the plaintiff driver was blocked, which required extraordinary caution. Although he was traveling at a reduced speed, namely, 25 to 30 miles per hour, according to his testimony, nevertheless, with a vehicle directly in front of him, according to defendant's testimony, it became his obligation to slow down considerably so as to avoid the possibility of colliding with the vehicle directly in his path. The traffic condition and the speed of plaintiff's vehicle in relation thereto created a circumstance that could avoid the strict *Rumble v. Lingo* rule of absolute liability. McCloskey had an obligation not to proceed blindly upon the arterial highway, secure in the supposition that he could do no wrong. He had the obligation to remain alert to the hazards surrounding him and with which he was confronted. He was required to make observations of the traffic which could conceivably cross his path under the existing conditions from the intersecting street and to act reasonably in the light of such observations. Al-

though as the favored driver, McCloskey was not required to have his car under such control as to avoid colliding with a subordinate driver coming illegally in his path, nevertheless, he was not excused from acting cautiously under the circumstances. For the reasons stated, I believe that the question of the contributory negligence of the plaintiff driver was properly submitted to the jury for its determination. The jury having returned a verdict against Mr. McCloskey, his separate claims were thereby barred.

 The situation in reference to Mrs. McCloskey is different. Defendant made no claim that she was contributorily negligent as a passenger in her husband's vehicle. The testimony that defendant looked before he entered into the Du Pont Highway and looked again to the south on the inside lane when his windshield was equal with the dividing line between the middle and inside lanes, cannot justify a finding by the jury that he did look, because a proper lookout means an effective lookout and defendant cannot be heard to say that he looked and did not see when if he had looked he should have seen. The law requires a continual vigilance on the part of a subordinate driver. McCloskey's vehicle was on the inside lane proceeding north. There is no substance in defendant's claim that McCloskey's vehicle may have come from the middle lane into the inside lane. There is no evidence to indicate that this is the case and furthermore, even if he had, the car of plaintiff driver should have been seen approaching on the inside lane if defendant had kept an effective lookout.

Defendant was confronted with a hazardous situation. He did not have to cross the highway at this point. He could have proceeded north to his right and crossed through the divided parkway and then traveled in his desired direction to the south without risk. He chose the more hazardous course, namely, proceeding directly across the highway. His being waved across by drivers in the stopped vehicles at the southerly end of Roosevelt Avenue was no excuse for his failure to

look and proceed with due care. Defendant's vehicle at the time of the accident was headed directly across the highway. He did not swerve either to his left or to his right for the reason that he had no time to do so because he was not aware of the plaintiff driver's vehicle until the moment of impact or immediately before the impact. At any rate, it is certain that he did not see plaintiff's vehicle until it was too late to avoid the collision although the car should have been clearly within his view if he had maintained a proper lookout before or at the time he reached the inside lane.

Plaintiff driver made a poor impression on the stand. Mr. McCloskey is an elderly gentleman. He was a stubborn witness. He did not possess the manner that would ingratiate himself with the jury. Defendant, on the other hand, was a young, kindly and personable individual who unquestionably captured the sympathy of the jury.

It is my belief that the verdict against Mrs. Mary E. B. McCloskey was against the weight of the evidence in relation to the law and that as a consequence there was a miscarriage of justice. I therefore feel compelled to grant a new trial in favor of plaintiff Mrs. Mary E. B. McCloskey.