Lawrence OLMSTEAD and Dawn
Olmstead, his wife, Plaintiffs,

v.

GENERAL MOTORS CORP., INC., and
Delaware Olds, Inc., Defendants.

Superior Court of Delaware.
Submitted Feb. 21, 1985.
Decided Oct. 10, 1985.

John A. Elzufon, of Elzufon & Bailey, P.A., Wilmington, for plaintiffs.

Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, for defendants.

O'HARA, Judge.

The matter before the Court involves motions for partial summary judgment and bifurcation by the defendants, General Motor Corp., Inc. ("G.M.") and Delaware Olds, Inc. ("DE Olds"), in this breach of warranty action brought by plaintiffs.

Plaintiffs allege that defendants violated both State, 6 *Del. C.* §§ 2–314 and 2–315, and Federal, 15 U.S.C. § 2304(a)(4), warranties by failing to repair, replace, or refund the purchase price of a defective 1979 Toronado ("the car"). G.M. has filed a motion in limine, in conjunction with the two motions mentioned above, to limit the evidence presented at trial with respect to damages to only that pertaining to the cost of repairs.

On May 5, 1979, plaintiffs purchased the car from DE Olds for $11,119.00. In addition to the standard 12,000 mile—12 month warranty, plaintiffs purchased a GM Continuous Protection Plan ("Plan") which was a limited warranty covering the lesser of 36,000 miles or 36 months from thé May 5, 1979 date of delivery. This Plan expressly excluded defendants from a duty to pay consequential and incidental damages as a result of car failure, but, rather, limited their obligation to repair or replacement of defective parts.

Beginning on June 4, 1979, and continuing through February 5, 1981, plaintiffs returned the car to DE Olds for repairs on approximately twenty occasions. The problems in need of correction ranged from front end alignments, poor paint finish and water leaks at first, to oil leaks and difficulty in starting the car that manifested themselves at the end of this period.

Dissatisfied with the service at DE Olds, plaintiffs brought their car to Ed Fine Olds/Honda, Inc. ("Fine Olds") on September 10, 1981, after noticing another oil leak. Plaintiffs made several more visits to Fine Olds, and no more visits to DE Olds, for repair of various problems including oil leaks and "starting" problems.

On March 29, 1982, plaintiff, Mr. Olmstead, was involved in an accident while driving the car. The other driver fled the scene, but there was no indication that Mr. Olmstead was at fault, and it was subsequently determined by an insurance investigator that the car suffered only body damage.

The three year warranty Plan expired on May 7, 1982, and while there is some dispute as to the car's mileage at that time since one repair estimate listed it at 64,897 while all of the other bills show a logical progression ending at 35,627 on July 9, 1982, the Court will rely on the latter number though this issue is non-dispositive in the present case.

On May 30, 1982, the car broke down and was in Fine Olds shop being repaired until

July 8, 1982. A mechanic retained by plaintiffs' insurer, State Farm Insurance Company ("State Farm") inspected the motor during this period and stated in a letter to State Farm that an oil leak was the cause of the "break-down." Furthermore, he said there was no connection between the March 29, 1982 accident and the "break-down." Plaintiffs paid $1,626.36 to Fine Olds for the repairs and rented a car from a friend during this period at a cost of $600.00.

On August 5, 1982, after being told by Fine Olds that there was no guarantee the problems previously discussed would not recur, plaintiffs traded the car in for a new one from that dealership. The new car cost $14,735.41 and plaintiffs received $8,285.41 on the trade-in, an amount in excess of the July, 1982 "blue book value" of $7,075.00–$7,875.00.

On March 10, 1983, plaintiffs brought an action for breach of warranty in this Court. They asserted both State and Federal claims, contending that the car was not merchantable, was unfit for its particular purpose, was not properly repaired or replaced, and there was no offer of a refund by defendants.

With respect to damages, plaintiffs claimed that they were entitled to recovery for loss of use of the car during its many repairs, the $600.00 cost of the rental car, $1,626.36 for repairs, loss in trade-in value on a less marketable car, and the loss to them of having to trade in a car barely three years old. Furthermore, plaintiffs claimed entitlement to attorney's fees plus costs, pursuant to 15 U.S.C. § 2310(d)(2).

In their Answer to the complaint, and throughout the course of this litigation, defendants have maintained that the oil leaks were caused by plaintiffs' failure to service the car, rather than by a defect. In addition, defendants submit that the complaint is barred by the statute of limitations, and that the warranty had expired before the May 30, 1982 "break-down."

The parties conducted discovery, in the form of interrogatories, requests for production, and depositions in the period from April 11, 1983 to April 10, 1984.

On June 14, 1984, G.M. filed a motion in limine to limit the evidence plaintiffs would be permitted to present at trial with regard to damages. Defendants point to 6 *Del. C.* § 2–714 as the applicable statutory section for damages in breach of warranty actions such as this one. Section 2–714(2) provides, "the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Defendants argue that this section precludes plaintiffs from recovering damages, if liability is established, for any amount greater than the cost of repairs. Therefore, defendants ask that plaintiffs not be allowed to present evidence of speculative loss, rental costs, and additional financing costs resulting from the trade-in.

In considering a motion for summary judgment, this Court must determine whether the moving party has demonstrated that there are no genuine issues of material fact. If after viewing the record in a light most favorable to the non-moving party, the Court finds there are no genuine issues of material fact, summary judgment will be appropriate. *Pullman, Incorporated v. Phoenix Steel Corporation*, Del.Super., 304 A.2d 334 (1973); *Haynes v. Ford Motor Co., Inc.*, Ala.Supr., 435 So.2d 1227 (1983).

The question raised by this motion for partial summary judgment is whether, assuming liability is established at trial, the failure to repair the defects within the warranty period constituted a failure of the essential purpose of the warranty, entitling plaintiffs to seek consequential damages notwithstanding the prohibition against them in the warranty, the lack of a formal revocation of acceptance, and plaintiffs' transfer of the car to another dealer for repairs during the warranty period.

The purpose of a limited warranty "is to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages.... From the point of view of the buyer the purpose is to give him goods that conform to the contract within a reasonable time after a defective part is discovered. The limited, exclusive remedy fails of its purpose and is thus avoided under § 2–719(2), whenever the warrantor fails to correct the defect within a reasonable period." *Beal v. General Motors Corporation*, D.Del., 354 F.Supp. 423 (1973).

The State statutory provision on revocation of acceptance specifies that such revocation "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it." § 2–608(2). Standing alone, this section would seem to render ineffective any claim of revocation once a buyer has traded in a car, or after substantial change as a result of several years depreciation.

Plaintiffs, however, advance a novel theory in support of their argument that a jury question exists as to whether there was a revocation of acceptance. They argue that defendants bear the burden of proof since the motion for summary judgment is theirs; the requirement of a formal revocation is not necessary when the warranty fails of its essential purpose, and the trade-in constituted a de facto revocation. Consequently, plaintiffs contend that the failure of the limited warranty serves to eliminate the prohibition against consequential damages in the warranty and § 2–719(3), making this a "proper" case for recovery of consequential damages under §§ 2–714(3) and 2–715.

■ None of the positions advanced by plaintiffs have support in caselaw or statute. They misinterpret the policy which views motions for summary judg-

ment most favorably to the nonmoving party as meaning they are absolved of the duty to reasonably notify the seller of revocation of acceptance. A buyer can not continue to use goods and later claim they had been of little value to him. *Waltz v. Chevrolet Motor Division*, Del.Super., 307 A.2d 815 (1973); *Lynx, Incorporated v. Ordnance Products, Inc.*, Md.App., 273 Md. 1, 327 A.2d 502 (1974). Viewing the record in a light most favorable to plaintiffs here does not mean they no longer possess the burden of establishing a breach of warranty under § 2–607(4).

■ Plaintiffs claim that the trade-in, which occurred three months after the expiration of the warranty and eighteen months after the last visit to DE Olds, for an amount exceeding "blue book value" constituted a de facto revocation ignores logic and the law. None of the cases cited by plaintiffs regarding a "reasonable time" in which to revoke after defects have not been corrected stand as authority for the view that no notice of revocation need be given to the seller. *Beal v. General Motors Corporation*, supra; *Ford Motor Co. v. Mayes*, Ky.App., 575 S.W.2d 480 (1978).

Though the lengthy list of repairs indicates a rather sub-standard automobile, close analysis reveals that most of the problems were minor and unrelated, and were corrected after several visits. Admittedly, the cumulative effect of many minor frustrations can lead a buyer to lose faith in the dealer who sold him the "lemon", but if that was the case here, plaintiffs should have attempted to revoke acceptance before taking the car to another mechanic, and surely before the expiration of the warranty period.

Additionally, the problems reported to be most significant, difficulty in starting the car and oil leaks, were only worked on by DE Olds twice for the former problem and once for the latter problem before the car was taken to Fine Olds. Plaintiffs' unwillingness to obtain satisfaction from DE Olds as to the two most crucial defects

hardly enables them to claim there was a failure to repair after many visits or a failure of the warranty. At the time of plaintiffs' first visit to Fine Olds, approximately eight months yet remained on the warranty. Though neither the Federal nor State laws specify how many failed attempts at repair of a defect are necessary before a buyer is justified in revoking acceptance, it would appear from caselaw that at a minimum there must be more than one or two attempts, or there must be an outright refusal to repair. *Volkswagen of America, Inc. v. Harrell*, Ala.Supr., 431 So.2d 156 (1983); *Winchester v. McCulloch Bros. Garage*, Ala.Supr., 388 So.2d 927 (1980).

■ For there to be an effective revocation of acceptance, a buyer must also show that the defects substantially impaired the value of the goods. *Lynx, Incorporated v. Ordnance Products, Inc.*, supra; *Ventura v. Ford Motor Corp.*, N.J.Super.A.D., 180 N.J.Super. 45, 433 A.2d 801 (1981). Considering that the car was never out of service for any prolonged period of time during the three years the warranty was in effect, and that an amount in excess of "blue book value" was received on the trade-in, one must come to the inescapable conclusion that there was no substantial impairment in value.

■ The Federal claims asserted by plaintiffs, under the Magnuson-Moss Warranty Act 15 U.S.C. § 2301 et seq. are likewise without merit in regard to consequential damages. Though plaintiffs are correct in noting that the Act is to be construed broadly, § 2310(e) provides, "[n]o action may be brought for failure to comply with any obligation under any written or implied warranty ... unless the person obligated under the warranty is afforded a reasonable opportunity to cure such failure to comply." Furthermore, 15 U.S.C. § 2311(b) has been read to mandate that in order to preserve one's rights under State law and recover damages pursuant to § 2–714, notification satisfying the requirements of § 2–607(3)(a) should be given to

the seller as soon as possible. *Mendelson v. General Motors Corp.*, 105 Misc.2d 346, 432 N.Y.S.2d 132 (1980). Though the purpose of the Act is to protect consumers, it would strain credulity to accept the argument that the Act discharges consumers of such unexacting obligations as notice of breach and return for repairs.

The Magnuson-Moss Warranty Act allows an exclusion from liability for consequential damages if it is limited to economic loss, and as defendants have noted, the Act defers to State law in determining the applicable measure of damages for violations. 15 U.S.C. § 2311(b)(2); *Mackenzie v. Chrysler Corp.*, 5th Cir., 607 F.2d 1162 (1979). Therefore, 6 *Del.C.* § 2–714 remains the general measure of damages and the Federal Act creates no alternative route to escape the prohibition against consequential damages.

Though it is not difficult to feel sympathetic to the plaintiffs due to the aggravation they experienced, even when the record is viewed most favorably to them, the Court cannot agree that a factual question exists to defeat the motion for summary judgment. One who has driven a car over 35,000 miles in three years and receives greater than "blue book value" on its trade-in, eighteen months after last complaining to the seller about defects and three months after the warranty's expiration, cannot be understood as having revoked acceptance. To allow plaintiffs to present evidence of consequential damages to the jury, after they have failed to comply with the requirements of the Delaware Uniform Commercial Code, would be a signal to dealers to expect liability for consequential damages even though they have not been notified of problems with a car during the warranty period.

■ Turning to the issue of attorney's fees, like consequential damages, these too cannot be awarded in this case. Though 15 U.S.C. § 2310(d)(2) allows a prevailing party to recover attorney's fees, that sub-section is subject to the provisions of § 2310(e), which bar one from seeking at-

torney's fees unless the seller "is afforded a reasonable opportunity to cure such failure to comply." *Ventura v. Ford Motor Corp.*, supra.

As the sole question to resolve at trial is whether defendants are liable for the cost of repairs, there is no need to address defendants' motion for bifurcation or their request to introduce off-setting evidence of depreciation in the event plaintiffs were allowed to present evidence of consequential damages.

For the reasons herein stated, it is the judgment of this Court that defendants' motion for partial summary judgment must be granted. Plaintiffs will be prohibited from introducing evidence as to consequential damages at trial, and if defendants are found liable, that liability will only extend to the cost of repairs.

IT IS SO ORDERED.