Eric V. FREEDMAN, Plaintiff,

v.

CHRYSLER CORPORATION, Kirkwood Motors, Inc. and Wilmington Trust Company, all Corporations of the State of Delaware, Defendants.

Civ. A. No. 85C–MY–23.

Superior Court of Delaware, New Castle County.

Submitted: March 15, 1989.
Decided: April 24, 1989.

692

David S. Lank, Theisen, Lank, Mulford & Goldberg, Wilmington, for plaintiff.

Somers S. Price, Jr., and Arthur L. Dent (trial counsel), Potter, Anderson & Corroon, Wilmington, for defendant Chrysler Corp.

John A. Faraone, Wilmington, for defendant Kirkwood Motors, Inc.

Thomas P. Collins, Wilmington Trust Co., Wilmington, for defendant Wilmington Trust Co.

## OPINION

MOORE, Justice [sitting by designation pursuant to Del. Const. Art. IV, § 13(2)].

The defendants, Chrysler Corporation (Chrysler), Kirkwood Motors, Inc. (Kirkwood), and Wilmington Trust Company (the bank), have moved for judgment notwithstanding the verdict ("JNOV") or, alternatively, for a new trial pursuant to Superior Court Civil Rules 50(b) and 59(a).

The plaintiff, Eric V. Freedman, brought this action for breaches of both the express and implied warranties of merchantability for alleged defects in a 1984 Dodge Charger, which he purchased new on February 28, 1984 from Kirkwood. The automobile was manufactured by Chrysler and sold to Freedman for $7,886. Plaintiff made a $2,000 down payment, and financed the balance with the bank.[1] Plaintiff sought to revoke acceptance of the vehicle pursuant to 6 *Del.C.* § 2–608.

The case was tried before a jury over a three day period. At the close of plaintiff's case in chief, defendants timely moved for a directed verdict on all counts of the complaint. A directed verdict was granted as to certain claims (Counts IV and V of the Complaint), because plaintiff had failed to present sufficient evidence supporting those allegations.

At the close of defendants' case, defendants renewed their motion for directed verdict on the remainder of the complaint. The motion was denied without prejudice to the defendants to renew the same after trial.

The jury returned a verdict for the plaintiff in the amount of $4,060.11 based solely on the implied warranty claim. The jury found for the defendants on the express warranty claim. However, that judgment was offset by $2,560.11, which the jury found represented the reasonable value of the plaintiff's use of the vehicle for the fourteen months between his purchase of the car and his attempted revocation of acceptance. Thus, the amount of the jury verdict in controversy is $1,500. This is the Court's decision on defendants' post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. For reasons hereafter stated, the motion for judgment notwithstanding the verdict will be granted.

### I.

#### A.

It is well settled in Delaware that when deciding a motion for JNOV, the trial court must view the evidence in a light most favorable to the non-moving party. *Moody v. Nationwide Mutual Insurance Co.*, Del. Supr., 549 A.2d 291, 293 (1988); *Gannett Co., Inc. v. Re*, Del.Supr., 496 A.2d 553

1. The plaintiff executed a conditional sales contract providing for 48 monthly payments of $158.47, beginning April 4, 1984, totaling $7,606.56.

(1985); *Eustice v. Rupert,* Del.Supr., 460 A.2d 507, 508 (1983); *Parks v. Ziegler,* Del.Supr., 221 A.2d 510, 511 (1966); *Chrysler Corp. v. Quimby,* Del.Supr., 1 Storey 264, 144 A.2d 123 (1958).

With this standard in mind, I turn to an examination of the record.

## B.

Between the time that plaintiff purchased the 1984 Dodge Charger on February 28, 1984, and April 25, 1985, the day on which he returned the car to Kirkwood and attempted to revoke his acceptance of the automobile, he experienced several problems with the vehicle. The first was on May 10, 1984, over two months after the car was delivered, when Freedman brought it to Kirkwood for warranty service. Plaintiff stated that he had trouble starting the car, that it hesitated, stalled and generally ran roughly. Also, he had experienced some "grinding" in the transmission. Whether or not these problems were fully corrected on May 10, 1984 is in dispute. For purposes of this motion, I will assume that they were not, as the plaintiff contends. However, it is undisputed that on the seven occasions when the car was in for service, it was unavailable to plaintiff only for the day of such service, i.e. a total of 7 days out of the 14 months (or approximately 420 days) during which plaintiff had full use of the car, and drove it a total of 15,353 miles. Up until the May 10 service, the plaintiff had driven the car 2,012 miles without any complaints to the defendants.

The second servicing of the car, also completed under warranty, was on July 12, 1984, five months after plaintiff bought it. The automobile was never out of use to plaintiff between the May 10 and July 12 repairs. In fact, there is no dispute that it was driven on a daily basis. Servicing was again completed in one day. By July 12 the plaintiff had driven the car nearly 4,000 miles.

The third occasion for service was on August 30, 1984. This time, however, the car was towed to another dealership, allegedly because it failed to start. The invoice that the plaintiff introduced into evidence reiterated the plaintiff's complaint that the car would not start. However, the service order stated that the cause of the problem was a dead battery. No further problems were discovered, nor was any other explanation offered by the plaintiff why the car failed to start. Aside from towing, the only service the car received was a recharge of its battery. There is no evidence whatever that there was a recurrence of any electrical problem causing a dead battery or the need to recharge the battery thereafter.

This Court is mindful of its duty to view the evidence in a light most favorable to the plaintiff. This does not mean, however, that the Court is to supply crucial evidence, where the plaintiff has failed to do so, nor does it mean that the Court is to ignore potentially damaging evidence introduced by the plaintiff which would tend to refute his own claim. *Cf. Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171 (3d Cir.1976), *cert. denied* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977) (court considered uncontradicted evidence adduced by *moving* party which undermined the non-moving party's *prima facie* case). *See also* 5A *Moore's Federal Practice,* ¶ 50.02[1] at pp. 50–29—50–30.

The fourth occasion for service was on November 1, 1984, almost nine months after the car's purchase. Plaintiff claims that the mechanical problems which previously existed had not abated. The purpose of the November 1 visit to Kirkwood was to permit Fred Layfield, a Chrysler factory representative, to inspect the car. Plaintiff had contacted Chrysler in October, complaining about the problems he was experiencing with the vehicle. Between the July 12, 1984 and November 1, 1984 service visits, plaintiff testified that he drove the car on a daily basis, compiling in excess of 5,000 miles during that period. In fact, by November 1 the car had been driven over 9,000 miles.

The car was serviced again on November 27, 1984 and December 13, 1984, and for the last time on December 31, 1984. On each of these occasions, the car was never out of plaintiff's use for more than one

day. By the December 31 service visit, the car had been driven 11,521 miles.[2] All repairs through the December 31 repair were completed under warranty.

On February 8, 1985, plaintiff wrote to the Chrysler Customer Satisfaction Board demanding arbitration of his service related problems. See Plaintiff's Exhibit 13. He met with various representatives of Chrysler up until April 22, 1985, but he did not complete the arbitration procedure. Instead, on April 25, 1985, plaintiff simply returned the car to Kirkwood, after driving it for 15,353 miles, as his purported revocation of the transaction.

Yet, plaintiff admitted that between January 1, 1985, the day following Kirkwood's last service of the car, and April 25, 1985, he drove it nearly 4,000 miles. The one exception being March 22, 1985, when after complaining of the car's failure to start properly, he had it towed to another dealership only to learn that the car was out of gas. Like the episode of the dead battery, once gas was put in the car no further service was required.

In addition to the foregoing mechanical problems, plaintiff also contends that the car's exhaust system, windows, dashboard, driver's seat cushion, and radio were "defective." Yet plaintiff drove this car over 15,000 miles during the fourteen months it was in his possession. The car was never out of use for longer than one day. On two occasions when the car was towed to other dealerships because of its failure to start properly, the first problem was a dead battery, which was simply corrected by recharging the battery, and the second was when the car was out of gas, again a simple correction. Significantly, it is undisputed that the express warranty had expired approximately two months before plaintiff's attempted revocation. If there were indeed any serious mechanical problems with the car, plaintiff's evidence utterly fails, as a matter of law, to support a claim that any such problems substantially impaired his use of the vehicle. Accepting the plaintiff's claims about the remaining "defects", clearly, they were of a non-mechanical nature, and never interfered with the plaintiff's extensive use of the car.

## II.

A motion for judgment notwithstanding the verdict ("JNOV") is governed by Superior Court Civil Rule 50(b).[3] The standard for granting a motion for JNOV is the same as that for granting a directed verdict. Cf. Storey v. Camper, Del.Supr., 401 A.2d 458 (1979). Accord 5A Moore's Federal Practice ¶ 50.07[2] (2d ed. 1989) (construing identical Federal Rule of Civil Procedure 50(a), (b));

The Delaware Supreme Court, in stating the proper standard applicable to granting a JNOV, has held that: "[o]nly where the facts permit reasonable persons to draw but one inference—adverse to the non-moving party—is a moving party entitled to a finding and judgment as a matter of law." Eustice v. Rupert, Del.Supr., 460 A.2d 507, 509 (1983), citing Johnson v. Hockessin Tractor, Inc., Del.Supr., 420 A.2d 154 (1980); Storey v. Castner, Del.Supr., 314 A.2d 187 (1973). See also Gannett Co.,

---

**2.** The number of miles that plaintiff had driven the car had tapered off somewhat since October of 1984. Plaintiff explained that this was due to the fact that he had lost his job in October (remaining unemployed until at least April 1985), and was living with his parents in Newark, Delaware, instead of his prior residence in Maryland. Thus, he was not driving the car as much as he had been prior to his loss of employment.

**3.** Super.Ct.Civ.R. 50(b) provides, in pertinent part, as follows:

(b) **Motion for Judgment Notwithstanding the Verdict.** Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the Court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; ... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the Court may allow the judgment to stand or may reopen the judgment as if the requested verdict had been directed.

*Inc. v. Re,* Del.Supr., 496 A.2d 553, 557 (1985); *Haveg v. Guyer,* Del.Supr., 226 A.2d 231, 233 (1967). Further, "in ruling on [a] motion for a directed verdict ... the trial judge [is] required to determine whether or not under any reasonable view of the evidence the jury could justifiably find in favor of the [non-moving party] and against the [moving party]. If such is the case, then (the trial judge) must submit the factual issues to the jury for its determination." *Moody v. Nationwide Mutual Insurance Co.,* Del.Supr., 549 A.2d 291, 293 (1988); *Eustice,* 460 A.2d at 409; *Ebersole v. Lowengrub,* Del.Supr., 208 A.2d 495, 498 (1965). Before a case can be submitted to a jury, however, a plaintiff has the burden of proving a *prima facie* case. *Moody,* 549 A.2d at 292; *Ebersole,* 208 A.2d at 497.[4]

I am mindful of the historical reluctance of our courts, based on constitutional principles, to interfere with jury verdicts.[5] *See Burns v. Delaware Coca–Cola Bottling Co.,* Del.Supr., 224 A.2d 255, 256 (1966). This does not mean, however, that the Court is required to assume an unreasonable view of the evidence, nor is it required to ignore evidence which the plaintiff has submitted tending to refute his own claim.

I have concluded that the defendants in this case are entitled, as a matter of law, to judgment notwithstanding the verdict. Plaintiff's evidence was legally insufficient to sustain his cause of action. In so holding, I have not considered any of the very substantial evidence adduced by the defendants, including the jury's inspection of the car, and a demonstration of the car by the unrebutted testimony of an independent expert who examined the car under a wide range of conditions over a three day period,

and found only one of plaintiff's alleged defects—the radio lost a pre-set station. Nor have I weighed plaintiffs' evidence, or assumed that it is anything but credible. *Moody,* 549 A.2d 291. It is well settled that: "[t]he existence of a 'mere scintilla' of evidence in favor of the non-moving party is insufficient to support the verdict; [t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." 9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2524, at 542–43 (1971). *See also* 5A Moore's Federal Practice ¶ 50.02[1] (2d ed. 1989); *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1179 and n. 6 (3d Cir.1977), *cert. denied* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

Although motions for judgment notwithstanding the verdict and for a new trial are made in the alternative pursuant to Super. Ct.Civ. Rule 50(b), there is a distinction between the two. *See Peters v. Gelb,* Del. Supr., 314 A.2d 901, 904 (1974). *See also McCloskey v. McKelvey,* Del.Super., 174 A.2d 691 (1961), wherein the court compared the purpose of the two motions, noting particularly that:

"[i]n contradistinction [to a motion for a new trial], when the Judge considers a motion to direct a verdict he is not required to weigh the evidence. Instead, he views the evidence most favorably to the party against whom it is moved, and from that evidence, and from the inferences reasonably and justifiably to be drawn therefrom, he determines whether or not, *under the law,* a verdict might be

4. It is interesting to note that in *Towe v. Justis Brothers, Inc.,* Del.Super., 290 A.2d 657, 650 (1972), then Judge Christie denied a motion to dismiss a similar action because it was "conceivable that a defect existed in the refrigerator at the time of delivery and remained latent until manifested by the occurance of the fire. It is possible that an expert will so testify." However, in this case the plaintiff presented no such expert testimony even though plaintiff's counsel brought out at trial that he had the car examined by an expert in preparation for trial. I did not, however, instruct the jury on the usual

adverse inferences to be drawn from that circumstance, nor do I apply any such inference here. See, however, *Smith v. Van Gorkom,* Del. Supr., 488 A.2d 858, 878–79 (1985).

5. Indeed, the Delaware Constitution directs that jury verdicts are required to be upheld if "supported by evidence." Del. Const. Art IV, § 11. *Del.C.Ann. Eustice v. Rupert,* Del.Supr., 460 A.2d 507, 508 (1983); *Haveg Corporation v. Guyer,* Del.Supr., 226 A.2d 231, 233 (1967); *Chrysler Corp. v. Quimby,* Del.Supr., 144 A.2d 123 (1958).

found for the party having the burden. If not, the Judge should, *upon the ground that the evidence is insufficient in law,* direct a verdict against that party."

*McCloskey,* 174 A.2d at 693 (emphasis added). *See also Millman v. Millman,* Del. Supr., 359 A.2d 158, 160 (1976).

However, the Delaware Supreme Court has somewhat narrowed the distinction between motions for a directed verdict and for new trial based upon *weight of the evidence. See Storey v. Camper,* Del. Supr., 401 A.2d 458 (1979). *See also McCloskey v. McKelvey,* Del.Super., 174 A.2d 691 (1961).

The present motion for a JNOV does not raise issues which go to the weight of the evidence. That is, I do not reach my conclusion because the evidence submitted by the defendants so far outweighs the evidence adduced by plaintiff that no reasonable jury could have found in plaintiff's favor. Instead, my conclusion in this case is that the plaintiff's evidence does not, as a matter of law, rise to the level required to grant the remedy of revocation of acceptance under 6 *Del.C.* § 2–608.[6] Therefore, plaintiff has not made out a *prima facie* case and the matter should not have been submitted to the jury. While the plaintiff has shown that there were indeed some defects in the car, he has not shown that those defects "substantially" impaired the vehicle's value to him, as that standard must be reasonably and rationally inter-

preted. The defects of which the plaintiff complains simply do not rise to that level.

Given this conclusion, I also find that it is more appropriate to grant defendants' motion for JNOV rather than a new trial. A close reading of *McCloskey v. McKelvey, supra,* and *Storey v. Camper, supra,* dictates this result.

In *McCloskey,* the court granted a new trial. In distinguishing the *McCloskey* decision, the court in *Storey* (after discussing a long line of prior Delaware case law) noted that:

"[r]egardless of the reason, one cannot help but be struck by the deference of these cases to the constitutional role of the jury. While the *McCloskey* case appears to depart somewhat from this tradition, it is important to focus on what Judge Stiftel actually did in holding the verdict 'was against the weight of the evidence *in relation to the law.*'"

*Storey,* 401 A.2d at 463, *citing McCloskey v. McKelvey,* supra at 174 A.2d 696 (emphasis in original).[7]

In *McCloskey,* the plaintiffs did not move for a directed verdict, thus foreclosing the ability to later move for a JNOV. *See* Super.Ct.Civil Rule 50. The court in *Storey* gives strong indication that had a directed verdict been requested, it would have been proper to have granted it in lieu of granting a new trial.

The holding in *Storey* expressly followed established Delaware precedent, most nota-

---

6. Section 2–608 provides:

§ 2–608. **Revocation of acceptance in whole or in part.**

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity *substantially impairs* its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur *within a reasonable time after the buyer discovers or should have discovered the ground for it* and before any substantial change in condition of the goods which is not caused by

their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved *as if he had rejected them.* (emphasis added).

7. Likewise, in discussing *Luskin v. Stampone,* Del.Supr., 386 A.2d 1137, 1139 (1978) where it was concluded that "the jury's verdict [was] manifestly and palpably against the weight of the evidence (citing *McCloskey*)...." The court in *Storey* continued: "[b]ut a reading of the full opinion shows the court was convinced that the record in the case demonstrated that it was very likely the jury did not understand the law under the instructions given." *Storey,* 401 A.2d at 464. Further, "[t]he case [*Luskin*] expressly involved legal error and not merely 'weight of the evidence' considerations." *Id.*

bly *Philadelphia B. & W.R. Co. v. Gatta,* Del.Supr., 85 A. 721 (1913) and Judge Woolley's learned treatise, *Woolley on Delaware Practice,* § 733 (1906). An examination of the analysis of those two authorities in *Storey* lends considerable guidance to the resolution of the present motion. The following language relating to the proper course of action in cases such as the one at bar is worthy of repetition:

> "[t]he *Gatta* case, citing the same section from Judge Woolley's treatise [as the *McCloskey* case] in denying a motion for a new trial did recognize as a ground for a grant of a new trial the 'rendering of a verdict contrary to the law and the evidence. . . .' But if one looks to the particular section in Woolley which deals with a verdict against the evidence and examines the cases cited therein, one is struck by the fact that none of them are 'weight of the evidence' cases. Woolley, *supra,* § 735, p. 514, and cases cited therein at footnotes 3 and 4. *Each of the cited cases concern matters on which a trial court under modern practice would comfortably rule as a matter of law without the necessity for a new trial* or legal matters related to the technicalities of common law pleading."

*Storey,* 401 A.2d at 461–462 (emphasis added).[8]

With the foregoing guidance of our law, I now turn to the merits of this case.

**III.**

Delaware has codified the implied warranty of merchantability in its version of the Uniform Commercial Code. 6 *Del.C.* § 2–314.[9] As the Delaware Study Comment to § 2–314 states, the definition of "merchantable quality" in subdivision (2) sets a minimum quality standard. There was no intent to disturb "additional attributes of merchantability developed by usage of trade or case law." *Id.*

■ Where a warranty of merchantability has been violated, revocation of acceptance is an appropriate remedy. *Jones v. Croswell,* Del.Super., C.A. No. 83C–SE–7, O'Hara, J. (Nov. 8, 1983). Revocation of acceptance is governed by 6 *Del.C.* § 2–608.

The elements of a claim for a breach of the implied warranty of merchantability are: "(1) that a merchant sold the goods; (2) that such goods were not 'merchantable' at the time of sale; (3) that plaintiff was damaged; (4) that the damage was caused by the breach of the warranty of merchantability; and (5) that the seller had notice of the damage." *Neilson Business Equipment Center, Inc. v. Monteleone,* Del. Supr., 524 A.2d 1172, 1175 (1987), *citing F.E. Myers Co. v. Pipe Maintenance Servs., Inc.,* 599 F.Supp. 697, 703 (D.Del. 1984). The focus here is on the second element.

In *Skelton v. General Motors Corp.,* 500 F.Supp. 1181 (N.D.Ill.1980), *reversed on*

---

**8.** One explanation for the confusion surrounding this area prior to the considerable clarification given by the *Storey* opinion, is that prior to 1948, Delaware law did not provide for a motion for JNOV. As a result, the motion for a new trial was the only available post verdict motion. *Storey* at 463; *See* Herrmann, *The New Rules of Procedure in Delaware,* 18 F.R.D. 327, 340–341 (1955).

**9.** 6 *Del.C.* § 2–314 provides:

§ 2–314. **Implied warranty; merchantability; usage of trade.**

(1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may required; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (section 2–316) other implied warranties may arise from course of dealing or usage of trade.

*other grounds,* 660 F.2d 311 (7th Cir.1981), the court observed that:

> "[t]he implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectations of the buyer. Instead, it provides for a minimum level of quality—that the goods 'are fit for the ordinary purpose for which such goods are used.'" U.C.C. § 2–314(2)(c). Automobiles are designed for driving and therefore the question is whether the . . . vehicles at issue were fit for that purpose."

*Id.* at 1191–1192.[10] *See also Nielson Business Equipment Center, Inc. v. Monteleone,* Del.Supr., 524 A.2d 1172, 1175 (1987).

In *Olmstead v. General Motors, Inc.,* Del.Super., 500 A.2d 615 (1985), the court, in the context of a motion for partial summary judgment, held that the plaintiff in that case had failed to properly revoke acceptance of an automobile under § 2–608. *Olmstead* is distinguishable factually because the plaintiff there unsuccessfully attempted a *de facto* revocation by trading in the car with a different dealer from whom he had bought it, without giving notice to the original dealer. The car was traded in for an amount exceeding its "blue book" value three months after the warranty expired and eighteen months after the last visit to the original dealer (although the plaintiff had the car serviced at a different dealership in the interim). *Olmstead* was decided on the ground that no notice of revocation had been given to the seller, as required by § 2–608(2).

There are, however, some similarities between *Olmstead* and the present case. The court's language at page 618 is instructive:

> "[t]hough the lengthy list of repairs indicates a rather substandard automobile, close analysis reveals that most of the problems were minor and unrelated, and were corrected after several visits. Admittedly, the cumulative effect of many minor frustrations can lead a buyer to lose faith in the dealer who sold him the 'lemon', but if that was the case here, plaintiff should have attempted to revoke acceptance before taking the car to another mechanic, and surely before the expiration of the warranty period."

*Id.* at 618.

Further:

> "[t]hough neither the Federal nor State laws specify how many failed attempts at repair of a defect are necessary before a buyer is justified in revoking acceptance, it would appear from caselaw that at a minimum there must be more than one or two attempts, or there must be an outright refusal to repair. . . . Considering that the car was never out of service for any prolonged period of time during the three years the warranty was in effect and that an amount in excess of the 'blue book value' was received on the trade-in, one must come to the inescapable conclusion that there was no substantial impairment in value."

*Id.* at 619 (citations omitted).

Although *Olmstead* is distinguishable both procedurally and factually, the above quoted language is applicable. It is clear from a plain reading of the statute, and from the cases in this and other jurisdictions construing § 2–608 and similar statutes, that something more than a mere subjective impairment in value to the buyer is required to revoke acceptance. *Olmstead,* 500 A.2d 615, 619; *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 327 A.2d 502, 513 (1974) ("because of the requirement of showing 'substantial impairment' under § 2–608 there can be no revocation of acceptance merely by proving that there were defects without showing that they 'substantially impair the value of the [contract].'"; *See Fargo Machine & Tool, Co. v. Kearney & Trecker Corp.,* 428 F.Supp. 364 (E.D.Mich.1977) ("Every me-

**10.** Additionally, the court in *Skelton* held that the implied warranty of fitness for a particular purpose, 6 *Del.C.* § 2–315, is unavailable in the case of automobiles unless they are intended to be used for other than the ordinary purposes for which cars are designed. *Skelton,* 500 F.Supp. at 1191, n. 28. Accordingly, I note that 6 *Del.C.* § 2–315 is inapplicable as the plaintiff introduced no evidence tending to show that he purchased the car for anything other than its ordinary use.

chanical failure ... does not constitute a breach of warranty." *Id.* at 370. Further, "[i]t is not every breach of warranty which will entitle a buyer to revoke his acceptance under § 2–608...." *Id.* at 377.); *Web Press Services Corp. v. New London Motors, Inc.*, 203 Conn. 342, 525 A.2d 57 (1987); *Rozmus v. Thompson's Lincoln-Mercury Co.*, 209 Pa.Super., 120, 224 A.2d 782 (1966); *Ventura v. Ford Motor Corp.*, 180 N.J.Super. 45, 433 A.2d 801, 805 (App. Div.1981). *See also* J. White and R. Summers, *Uniform Commercial Code*, § 8–3 (2d ed. 1980); Anderson, *Uniform Commercial Code*, § 2–608:11 (2d ed. 1971).

Although the question of whether the value of goods is "substantially impaired" is ordinarily a question of fact, other jurisdictions have held that:

> "[t]he test for substantial impairment is both subjective and objective; it focuses first, on the needs and circumstances of the particular buyer seeking to revoke, and then considers whether, from an objective standpoint, the value of the goods to the buyer has in fact been impaired."

*Web Press Services Corp. v. New London Motors, Inc.*, 203 Conn. 342, 525 A.2d 57, 60 (1987); *Keen v. Modern Trailer Sales, Inc.*, 40 Colo.App. 527, 578 P.2d 668 (1978); *Bergenstock v. Lemay's G.M.C., Inc.*, 118 R.I. 75, 372 A.2d 69 (1977). As to this second objective standard, one court has observed that:

> "[t]he second inquiry is whether the nonconformity in fact substantially impairs the value of the goods to the buyer, having in mind his particular needs. This is an objective question in the sense that it calls for evidence of something more than plaintiff's assertion that the nonconformity impaired the value to him; it requires evidence from which it can be inferred that plaintiff's needs were not met because of the nonconformity. In short, the nonconformity must *substantially* impair the value of the goods to the plaintiff buyer. The existence of substantial impairment depends upon the facts and circumstances in each case.

*Jorgensen v. Pressnall*, 274 Or. 285, 545 P.2d 1382, 1384–85 (1976) (footnotes omitted) (emphasis in original).

As to the subjective aspect, the plaintiff's testimony was that the value of the car was substantially impaired to him. Even though this assertion merely parrots the language of the statute, I accept it in this context. *See Moody v. Nationwide Mut. Ins. Co.*, Del.Supr., 549 A.2d 291 (1988). While the statute appears to be subjective in nature, there clearly is an objective aspect to the "substantial impairment" test. Thus, the plaintiff is not relieved of his burden of proof merely because he parrots the subjective sounding words of the statute, even if full credibility is given his testimony. *Cf. Bergenstock v. Lemay's G.M.C., Inc.*, 118 R.I. 75, 372 A.2d 69 (1977).

It is both on the objective standard, and as discussed later, the untimeliness of his revocation—after expiration of the warranty—that the plaintiff's case fails. An automobile which is driven in a normal manner, and on a daily basis for fourteen months, compiling a total mileage of 15,353 miles, and not having been out of use longer than one day on each of the seven service visits during that time cannot be reasonably said to have mechanical defects which "substantially impair" its value. The vehicle may well have *defects* which were a nuisance to the owner, thus subjectively impairing the value of the automobile to him, but that does not end the inquiry.

The statute requires "substantial" impairment, and if any meaning is to be given to the intent of the General Assembly, this Court must be able to attach meaning to the plain language of the statute. Although it is not feasible to set forth any bright line rules concerning what constitutes "substantial" impairment, as distinguished from mere impairment, I believe that the present case, illustrates the difference. A mechanical defect cannot reasonably be said to substantially impair a car's value if such defects do not hinder the owner's ability to drive the car on a daily basis for fourteen months, logging over 15,300 miles in the process. *Olmstead supra.* The interior defects which plaintiff has alleged must be more than a mere nuisance to justify revocation of acceptance.

In sum, I conclude that plaintiff has failed to present a *prima facie* case as to the issues discussed above, and as such, the case should not have gone to the jury.

## IV.

The plaintiff is also required to prove that there was a timely revocation of acceptance under § 2–608(2). I also hold that plaintiff has failed to timely revoke acceptance of the car, having driven it daily for 14 months, accruing 15,353 miles, and attempting revocation only after the warranty had expired. Thus, the defendants' motion for JNOV is granted on this alternative ground as well.

Plaintiff drove the car for four months following the last repair on December 31, 1984, accruing almost 4,000 miles before the purported revocation on April 25, 1985. Significantly, his ultimate return of the car was not prompted by a specific incident or problem with the car's performance on April 25. As the courts of this state have held: "[a] buyer cannot continue to use goods and later claim they have been of little value to him." *Olmstead*, 500 A.2d at 618, *citing Waltz v. Chevrolet Motor Division*, Del.Super., 307 A.2d 815 (1973). *See also Lynx, Inc. v. Ordnance Products, Inc.*, 273 Md. 1, 327 A.2d 502 (1974). *See also Allis–Chalmers Corp. v. Sygitowicz*, 18 Wash.App. 658, 571 P.2d 224 (1977), *See also, Stamm v. Wilder Travel Trailers*, 44 Ill.App.3d 530, 3 Ill.Dec. 215, 358 N.E.2d 382 (1976); *Fargo Machine & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364 (E.D.Mich.1977).[11]

The four month delay, following the last repair, in returning the car (which incidentally was two months after the express warranty had expired), was not caused by the defendants' assurances that an existing and known non-conformity would be corrected. *Compare Ed Fine Oldsmobile, Inc. v. Knisley*, Del.Super., 319 A.2d 33 (1974). Defendants are entitled to judgment as a matter of law.

## V.

In the plaintiff's memorandum of law opposing the defendants' motions, great emphasis is placed upon my earlier reluctance at trial to grant the directed verdict motions made at the close of plaintiff's case in chief. However, the basic concept of Rule 50 defeats the argument. There would be no need for a provision relating to motions for judgment notwithstanding the verdict in our rules if the plaintiff's argument had force. As Rule 50(b) itself provides, whenever a motion for a directed verdict is denied "for any reason", the Court is "deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Moreover, the propriety of denying a motion for a directed verdict in favor of later deciding the matter in a motion for JNOV is generally recognized and encouraged. *See generally* 1 Moore's Rules Pamphlet, Federal Rules of Civil Procedure (1989) ("[i]t has been held that in most cases it is in the best interests of efficient judicial administration for a trial judge to refrain from directing a verdict in favor of deciding a motion for judgment n.o.v.") *Id.* citing *Mattivi v. South African Marine Corp.*, 618 F.2d 163 (2d Cir.1980). *See also* 5A Moore's Federal Practice, ¶ 50.05[3] (2d ed. 1989).

In sum, I conclude that the plaintiff has failed to meet the requirements of both 6 *Del.C.* § 2–314, regarding substantial impairment, and § 2–608, regarding timeliness of revocation. As a result, the case should not have been submitted to the jury. The defendants' motion for JNOV is GRANTED.

IT IS SO ORDERED.

11. In *Allis–Chalmers*, the court was not technically required to reach the "substantial impairment" issue because the buyer was held to have waived the defense of revocation of acceptance by not pleading it in his defense. Nonetheless, the court held that even though the buyer complained of oil leaks in a tractor within one week of his purchase of it, his extensive use of the tractor for thirteen months negated a showing of substantial impairment in the absence of showing that the use of the tractor was not otherwise normally productive.