## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DELPHI PETROLEUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N12C-02-302 FWW |
| | ) | |
| MAGELLAN TERMINALS | ) | |
| HOLDINGS, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 7, 2016
Decided: December 30, 2016

Upon Plaintiff Delphi Petroleum, Inc.'s Motion for New Trial on Certain Claims, Amendment of Certain Findings of Fact and Conclusions of Law, Entry of New Findings of Fact and Conclusions of Law and to Amend the Judgment and Request for Hearing on Motion for New Trial,
**DENIED.**

Upon Plaintiff Delphi Petroleum, Inc.'s Motion for Pre-Judgment and Post-Judgment Interest,
**GRANTED.**

## ORDER

Marc S. Casarino, Esquire, White and Williams, LLP, 824 N. Market St., Suite 902, P.O. Box 709, Wilmington, Delaware, 19899-0709; Peter J. Mooney, Esquire, White and Williams, LLP, 1650 Market Street, One Liberty Place, Suite 1800, Philadelphia, Pennsylvania 19103-7395, Attorneys for Plaintiff.

Herbert W. Mondros, Esquire, Margolis Edelstein, 300 Delaware Avenue, Suite 800, Wilmington, Delaware 19801; David E. Keglovits, Esquire and Erin K. Dailey, Esquire, GableGotwals, 1100 ONEOK Plaza, 100 West Fifth Street, Tulsa, Oklahoma 74103-4217, Attorneys for Defendant.

**WHARTON, J.**

This 30th day of December, 2016, upon consideration of Plaintiff Delphi Petroleum, Inc.'s ("Delphi") Motion for New Trial on Certain Claims, Amendment of Certain Findings of Fact and Conclusions of Law, Entry of New Findings of Fact and Conclusions of Law, and to Amend the Judgment ("Motion");[1] Defendant Magellan Terminals Holdings, L.P.'s ("Magellan") Response;[2] Delphi's Reply;[3] Plaintiff Delphi Petroleum, Inc.'s Request for a Hearing on Motion for New Trial;[4] Plaintiff Delphi Petroleum, Inc.'s Motion for Pre-Judgment and Post-Judgment Interest;[5] Defendant's Response to Plaintiff's Motion for Pre-Judgment and Post-Judgment Interest; and the record in this matter, it appears to the Court that:

1. Delphi brought this action against Magellan in February 2012 alleging breach of contract and fraud against Magellan arising out of the operation of a marine terminal located at the Port of Wilmington in Delaware. After parties engaged in extensive discovery, motion practice and amendments of the pleadings, the matter was tried by the Court without a jury from July 27 through July 31, 2015. After trial, Delphi unsuccessfully moved to amend the pleadings.[6] Following lengthy post-trial submissions by the parties, the Court issued its

---

[1] D.I. 261.
[2] D.I. 271.
[3] D.I. 273.
[4] D.I. 274.
[5] D.I. 263.
[6] D.I. 251, 256.

Decision After Trial ("Decision") on June 27, 2016.[7] On July 12, 2016 Delphi submitted the Motion accompanied by an 88 page supporting brief.[8] After Magellan moved to strike the brief as exceeding the Court's page limitation, the Court granted Delphi's request to submit an amended brief of 45 pages.[9] Magellan submitted its Response[10] and Delphi replied.[11] Delphi also moved for pre-judgment and post-judgment interest on July 12, 2016.[12] Magellan responded on August 8, 2016.[13] Finally, Delphi requested a hearing on its motion for a new trial on August 22, 2016.[14]

2. The Motion asks the Court to order a new trial on certain claims, amend certain findings and conclusions, enter new findings and conclusions, and amend the judgment. In all, Delphi asks the Court to review the Decision with respect to eleven separate issues.[15] Magellan opposes the Motion.[16]

3. Superior Court Civil Rule 59(a) provides that new trials "may be granted . . . on all or part of the issues in an action in which there has been a trial for any of the reasons for which new trials have heretofore been granted in the Superior

---

[7] D.I. 260.
[8] D.I. 261, 262.
[9] D.I. 264, 266, 267.
[10] D.I. 271.
[11] D.I. 273.
[12] D.I. 263.
[13] D.I. 270.
[14] D.I. 274.
[15] D.I. 261.
[16] D.I. 271.

3

Court."[17] The Rule further provides where the matter was tried without a jury, "the Court may open the judgment, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."[18]

4. The parties have advanced somewhat different approaches they believe the Court should take in addressing the Motion. In applying Rule 59(a) to the portion of the Motion seeking a new trial or an amendment of the Court's finding of fact and conclusions of law, Delphi urges the Court to take a flexible approach in exercising its discretion.[19] With respect to the portion of the Motion seeking to alter or amend the judgment, Delphi once again urges the Court to exercise its discretion in determining whether it has shown "the need to correct clear error of law or to prevent manifest injustice."[20]

5. Magellan, on the other hand, cites the Court to what it calls "axioms" to guide the Court's approach to the Motion.[21] First, it argues that a motion for a new trial should only be granted when the verdict is "against the clear weight of the evidence and allowing the verdict to stand would be a miscarriage of justice."[22] Next, Magellan says that it is Delphi's burden to show that an injustice has been

---

[17] Super. Ct. Civ. R. 59(a).
[18] *Id.*
[19] *See* D.I. 268 at 2, 3 (citing *McCloskey v. McKelvey*, 174 A.2d 691, 693 (Del. Super. 1961)).
[20] *Id.* at 2 (quoting *King v. McKenna*, 2015 WL 5168481 at *3 (Del. Super. 2015)).
[21] D.I 271 at 1.
[22] *Id.* (citing *Gatta v. Philadelphia, B. & W. R. Co.*, 83 A. 788, 793 (Del. Super. 1911)).

4

done and that a new trial, should the Court order one, likely would result in a different verdict.[23] Further, Delphi may not raise new grounds not raised in the original proceedings,[24] nor may the Court open the case because Delphi represents that it can produce evidence which it could have produced at trial, but did not.[25] Finally, Magellan argues that a damage award should be modified only when it is "so unreasonable as to shock the conscience, or is not the result of a logical deductive process."[26]

5. Here, because the Court was sitting without a jury, there is no need to accord the normal deference to the Decision that the Court would accord to a verdict rendered by a jury. Therefore, the Court reviews the Decision with an eye to determining if, in its discretion, it incorrectly determined the facts or misapplied the law to those facts in order to correct a clear error of law or to prevent a manifest injustice. The Court reviews its own logic and deductive process in reviewing the damage awards.[27]

6. By way of background, Delphi buys and sells petroleum products and Magellan operates a marine terminal ("Terminal") to store and handle petroleum products. Delphi and Magellan executed several contracts through which

---

[23] *Id.* (citing *Vansant v. Kowalewski*, 90 A. 421, 424 (Del. Super. 1914)).
[24] *Id.* (citing *H. v. H.*, 314 A.2d 420, 422 (Del. Super. 1970)).
[25] *Id.* (citing *Vansant*, 90 A. at 421).
[26] *Id.* (quoting *Colonial Const., Inc. v. English*, 2010 WL 4812858, at *1 (Del. Super. 2010)).
[27] It should go without saying that any award of damages the Court entered in the Decision would not shock the Court's conscience.

5

Magellan agreed to provide Delphi with services at the Terminal and Delphi agreed to pay Magellan certain fees. Delphi and Magellan executed a Terminalling Agreement on September 1, 2005 ("2005 Agreement").[28] Delphi and Magellan entered into a second Terminalling Agreement that was executed by Delphi on May 13, 2011 and by Magellan on May 16, 2011 ("2011 Agreement").[29] Delphi and Magellan executed the Flush Oil Agreement on March 1, 2007.[30] On February 29, 2012, Delphi filed a Complaint against Magellan for breach of contract, negligence, conversion and unjust enrichment related to the 2005 and 2011 Agreements.[31] On October 23, 2013, the Court approved the parties' stipulation to file an Amended Complaint.[32] The Amended Complaint contained counts for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment and fraud.[33] The Court granted Magellan's Motion to Dismiss the Amended Complaint with respect to the conversion, unjust enrichment and fraud counts[34] and the Court denied Delphi's Motion for Reconsideration of the Order.[35] On December 22, 2014, Delphi filed a Motion for

---

[28] SAC, D.I. 165, at Ex. A.
[29] *Id.* at Ex. B.
[30] *Id.* at Ex. C.
[31] *See* Compl., D.I. 1.
[32] *See* Oct. 23, 2013 Order, D.I. 39.
[33] Am. Compl., D.I. 33.
[34] *See* May 2, 2014 Order, D.I. 67.
[35] *See* Aug. 1, 2014 Order, D.I. 99.

Leave to File Second Amended Complaint ("SAC").[36] On January 16, 2015, both parties filed Motions for Partial Summary Judgment.[37] By Order dated January 20, 2015, the Court granted Delphi's Motion for Leave to File Second Amended Complaint, which revived Delphi's fraud claims.[38] On February 2, 2015, Delphi filed the SAC alleging breach of contract, breach of the implied covenant of good faith and fair dealing and three claims for fraud.[39] On February 17, 2015, Magellan filed a Motion to Dismiss the three fraud claims in the SAC.[40] The Court dismissed Count III of the SAC and granted summary judgment in Magellan's favor on ¶8(k), (d), (o) and (a) of the SAC.[41] The Court limited Count II of the SAC to the allegations set forth in ¶8(c), (n), (q), (u), (v) and (w).[42] After the close of Plaintiff's case in chief at trial, Magellan moved for judgment as a matter of law on Count V of the SAC; Count I as alleged in ¶8(e), (j) and (v); Count II as alleged in ¶8(c); and Count IV of the SAC.[43] The Court deferred ruling on Count V.[44] The Court granted Magellan's motion as to counts ¶8(e),[45] (c)[46] and (v)[47] and Count IV of the SAC.[48] The Court denied Magellan's motion as to ¶8(j).[49]

---

[36] D.I. 137.
[37] D.I. 155 (Magellan); D.I. 156 (Delphi).
[38] *See* Jan. 20, 2015 Order, D.I. 164.
[39] *See generally* SAC.
[40] *See* Def.'s Mot. to Dismiss, D.I. 175.
[41] *See* June 23, 2015 Opinion and Order, D.I. 200.
[42] *Id.*
[43] Tr., July 29, 2015, D.I. 242, at 19:13-23.
[44] *Id.* at 61:2-5.
[45] *Id.* at 62:2-3.
[46] *Id.* at 63: 11-14.

7. The Court was left to consider the following claims for breach of contract under Count I of the SAC:

  a. ¶8(b): Magellan breached Clause 2.10(a) of Schedule A of the 2011 Agreement by use of the heaters at the Terminal to heat tanks other than the tanks leased to Delphi and by charging Delphi for heating not in accordance with the 2011 Agreement.

  b. ¶8(f): Magellan overbilled Delphi for the costs relating to the cleaning of tanks leased to Delphi in violation of Clauses 2.7 and 2.8 of Schedule A of the 2005 Agreement. Delphi was to be charged only for the cost of the removal of Delphi product by a shovel and broom but Magellan charged Delphi for cleaning in excess thereof.

  c. ¶8(g): Magellan breached Clauses 2.7 and 2.8 of Schedule A of the 2005 Agreement by arranging for tank cleaning services to be performed in a manner to minimize the costs of the cleaning for which Magellan was responsible and maximize the costs for which Delphi was responsible.

  d. ¶8(h): Magellan breached Clause V of the 2005 Agreement by failing to reduce the shell capacity of Tank 4 when Magellan installed a second bottom in Tank 4 over the existing bottom.

  e. ¶8(i): Magellan breached Clause 2.8 of Schedule A of the 2005 Agreement by notifying Delphi that a tank had been returned to service when the tank was incapable of receiving product at the rate stipulated in Clause 2.4 of Schedule A of the 2005 Agreement and by charging Delphi the Storage Rate for the tank during a period the tank was Out of Service.

  f. ¶8(j): Magellan breached Clause 8 of Schedule B of the 2005 Agreement by refusing to compensate Delphi for demurrage incurred by Delphi during the discharge of the barge "DBL-76"

---

[47] *Id.* at 63: 8-10.

[48] *Id.*

[49] *Id.* at 62:4-8.

by restricting the discharge rate in March 2009. The restriction of the discharge rate violated Clause 2.4 of Schedule A of the 2005 Agreement which requires Magellan to be prepared to receive product from vessels at all times.

g. ¶8(l): Magellan breached the 2005 Agreement in September 2011 by placing a mixture of material that Magellan had cleaned from a tank and material Magellan had obtained from a third party into a tank leased by Delphi without Delphi's approval.

h. ¶8(m): Magellan failed to compensate Delphi for 301 barrels of Delphi product it had borrowed from Delphi in August 2011 but did not return.

j. ¶8(n): Magellan contaminated Delphi's product in Tank 17 in September, 2011 when Magellan required Delphi to take back a portion of the product that Magellan had borrowed from Delphi, at a time when Delphi did not have a suitable tank available to accept such product, thereby causing contamination to the product already in the tank into which such product was placed. Delphi incurred costs for inspection, and mixing and transfer charges, and suffered the downgrade of the product used to cure the contamination.[50]

k. ¶8(p): Magellan breached the 2005 Agreement by failing to properly credit Delphi for approximately 2,000 barrels of No. 2 oil in the pipeline to Conectiv's power plant in Edgemoor, Delaware.

l. ¶8(q): On June 7, 2011, Magellan improperly transferred higher sulfur oil into a Delphi tank containing lower sulfur oil, thereby contaminating it. Magellan thereafter agreed to pay Delphi

---

[50] In the Court's June 23, 2015 Order and Opinion, at 55, the Court ruled

[a]s to ¶¶8(n) and (q), relating to alleged instances of tank contamination, of the SAC,[50] the Court finds that Magellan did not address the conduct at issue in its submissions to the Court and, therefore, has not identified any express contractual provision that would preclude a claim for breach of the implied covenant of good faith and fair dealing.

Because the Court did not rule on the breach of contract claim, the Court considered it on the merits.

9

$16,957.82 for such contamination but has failed and refused to make payment.[51]

    m.  ¶8(r): Magellan tendered to Delphi inaccurate invoices requiring Delphi to devote the valuable time of its employees to investigate and correct Magellan's mistakes, and Delphi has paid Magellan sums not actually due by relying on the accuracy of the invoices and is entitled to be refunded all amounts overpaid.

    n.  ¶8(s): Magellan has breached Clause 3.4 of Schedule A of the 2005 and 2011 Agreements, and the custom and practice between the Parties, by charging Delphi interest on invoices that contain invalid and/or erroneous charges, by incorrectly calculating the interest, if this Court allows Magellan to claim interest, and by failing to apply credits due Delphi in good faith and/or in the manner agreed to by the Parties.

    o.  ¶8(t): Magellan breached the 2005 Agreement by charging for services that were either not performed and/or at rates higher than agreed by the Parties.

    p.  ¶8(u): Magellan overbilled Delphi by at least $580,000 between 2005-11 for the fuel consumed to heat Delphi's oil tanks, and then concealed its overcharges. Delphi confirmed Magellan's overbilling in December, 2014.

    q.  ¶8(w): Magellan forced Delphi to make $2,065,942.02 in collateral deposits in response to Magellan's threatened and actual imposition of an invalid warehouseman's lien on Delphi's product, which was not permitted under the 2005 or 2011 Agreements, exceeded any legitimate amount owed, and failed to credit Delphi with amounts Magellan knew it had overbilled Delphi.

The remaining claims under Count II, Breach of the Implied Covenant of Good Faith and Fair Dealing, were:

---

[51] *See supra* note 50.

10

a. ¶8(n): Magellan contaminated Delphi's product in Tank 17 in September, 2011 when Magellan required Delphi to take back a portion of the product that Magellan had borrowed from Delphi, at a time when Delphi did not have a suitable tank available to accept such product, thereby causing contamination to the product already in the tank into which such product was placed. Delphi incurred costs for inspection, and mixing and transfer charges, and suffered the downgrade of the product used to cure the contamination.

b. ¶8(q): On June 7, 2011, Magellan improperly transferred higher sulfur oil into a Delphi tank containing lower sulfur oil, thereby contaminating it. Magellan thereafter agreed to pay Delphi $16,957.82 for such contamination but has failed and refused to make payment.

c. ¶8(u): Magellan overbilled Delphi by at least $580,000 between 2005-11 for the fuel consumed to heat Delphi's oil tanks, and then concealed its overcharges. Delphi confirmed Magellan's overbilling in December, 2014.

d. ¶8(w): Magellan forced Delphi to make $2,065,942.02 in collateral deposits in response to Magellan's threatened and actual imposition of an invalid warehouseman's lien on Delphi's product, which was not permitted under the 2005 or 2011 Agreements, exceeded any legitimate amount owed, and failed to credit Delphi with amounts Magellan knew it had overbilled Delphi.

Additionally, the Court considered Count V – Fraud in the Inducement, Count VI – Return of Collateral Deposit, and Magellan's Amended Contingent Counterclaim.

8. In reaching its Decision, the Court carefully considered each of the issues before it, made factual findings by weighing the credibility of witnesses and resolving conflicts in testimony, reached conclusions of law by applying what it

11

determined to be the correct legal standards, and attempted to resolve all of the issued presented, sometimes finding for Delphi and sometimes for Magellan.

9. In its Motion, Delphi challenges the Court's Decision with respect to eleven issues. Delphi argues that the Court erred in: (1) determining that payments made by Delphi to Magellan were not collateral, but rather were unconditional payments under the contract thereby making Magellan's contingent counterclaim moot – SAC ¶ 8(w); (2) determining that Magellan did not breach 2011 Agreement with respect to tank heating – SAC ¶ 8(b); (3) determining that Magellan did not breach the 2005 Agreement with respect to tank heating charges – SAC ¶¶ 8(s), (t); (4) resolving various tank cleaning issues – SAC ¶¶ 8 (f), (g), (l), (r), (t); (5) awarding interest to Magellan – SAC ¶ 8(s); (6) determining that Delphi was not entitled to compensatory damages because it had had failed to mitigate its damages on its Fraud in the Inducement claim – SAC Count V; (7) setting the start date for pre-judgment interest at September 2013; (8) determining that Magellan was not responsible for 301 "lost" barrels of product – SAC ¶ 8(m); (9) dismissing Delphi's Fraud claim in June 2015 – SAC ¶ 8(v); (10) entering judgment as a matter of law on Delphi's lost Product claim - SAC ¶ 8(e); and (11) determining that Delphi did not own the product in the Conectiv line – SAC ¶ 8(p).[52]

---

[52] D.I. 271.

10. The Court has carefully reviewed each of Delphi's contentions and Magellan's responses. Having done so, it is apparent to the Court that the Motion is, in large measure, an invitation to engage in an extended re-litigation of issues previously fully litigated and resolved by the Court. The Court declines the invitation. The Court believes that it considered each of the issues raised in the Motion fully when each was presented, determined the facts correctly from the evidence, applied the law correctly to the facts as it found them, and fully explained its conclusions. In short, the Court is not persuaded by any of the arguments raised by Delphi in the Motion that it needs grant the Motion in order to correct clear errors or prevent manifest injustice. Accordingly, the Motion, along with the request for a hearing on the Motion, is **DENIED.**

11. Finally, the Court turn's to Delphi's Motion for Pre-Judgment Interest and Post-Judgment Interest. Having considered that motion and Magellan's Response, the Motion for Pre-Judgment Interest and post-Judgment is **GRANTED.**

**THEREFORE,** Plaintiff Delphi Petroleum, Inc.'s Motion for New Trial, Amendment of Certain Findings of Fact and Conclusions of Law and New Findings and Conclusions, and to Amend the Judgment, along with the request for a hearing on the Motion, is **DENIED.**

13

Plaintiff Delphi Petroleum, Inc.'s Motion for Pre-Judgment Interest and Post-Judgment Interest is **GRANTED**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, Judge