George NACCI, Individually and as guardian and next friend of Mark Nacci, a minor, Plaintiffs,

v.

VOLKSWAGEN OF AMERICA, INC., a New Jersey corporation, et al., Defendants.

Superior Court of Delaware, New Castle.

Sept. 11, 1974.

Samuel V. Abramo, and E. Leigh Hunt, of Abramo, Hunt & Abramo, Wilmington, for plaintiffs.

Warren B. Burt, and Robert G. Carey, of Prickett, Ward, Burt & Sanders, Wilmington, for defendants Volkswagen of America, Inc. and Volkswagenwerk Akliengesellschaft.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant·Volkswagen Atlantic, Inc.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, for defendant Marie Pittenger.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TAYLOR, Judge.

This action is to recover for injuries sustained when a minor child riding on a bicycle collided with a Volkswagen stationwagon. The impact of the collision broke the left front parking light of the Volkswagen and caused the tendon in the child's knee to be severed. Plaintiff seeks recovery from the manufacturer of the Volkswagen, Volkswagenwerk Akliengesellschaft [VWAG], a corporation of West Germany, and the American importer of Volkswagens, Volkswagen of America, Inc. [VWoA][1]. These defendants have moved for summary judgment on the ground that the manufacturer's duty with respect to design does not extend to those who collide with the vehicle.

It is undisputed that the Volkswagen was either stopped or going very slowly at the time of the collision.

At the outset, it is important to note that it is not contended that the Volkswagen was not functioning properly at the time of the collision or that the operator was prevented from taking due care in the opera-

1. An Opinion dealing with the issue of personal jurisdiction over certain defendants in this action appears at 297 A.2d 638.

tion of the vehicle because of some defective design.

Under the law of this State, as it existed prior to adoption of the Uniform Commercial Code, the liability of a seller or manufacturer of a product extended to a person who was not in privity with the seller or manufacturer only where the product was known to the seller to be imminently dangerous to life and limb or was likely to become so when put to its intended use if constructed defectively. Moore v. Douglas Aircraft Co., Del.Super., 282 A.2d 625 (1971). This is true whether the cause of action was founded upon tort or contract. Ciociola v. Delaware Coca-Cola Bottling Company, Del.Supr., 3 Storey 477, 172 A.2d 252 (1961). This approach has been uniformly applied by the Courts of this State. Gorman v. Murphy Diesel Co., Del.Super., 3 Terry 149, 29 A.2d 145 (1942); Hartford Accident and Indemnity Corp. v. Anchor Hocking Glass Corp., Del.Super., 5 Terry 39, 55 A.2d 148 (1947); Barni v. Kutner, Del.Super., 6 Terry 550, 76 A.2d 801 (1950); Behringer v. William Gretz Brewing Co., Del.Super., 3 Storey 365, 169 A.2d 249 (1961); Kates v. Pepsi Coca Bottling Co., Del.Super., 263 A.2d 308 (1970). *Moore* specifically rejected (in the absence of legislative action) expansion of the Delaware concept of manufacturer's liability to embody the "strict liability" concept.

The Uniform Commercial Code was adopted effective July 1, 1967.[2] The complaint alleges that the Volkswagen was purchased new in 1969. Neither party contends that the Uniform Commercial Code is not applicable to the facts of this case.

5A Delaware Code Section 2–318 provides that the seller's warranty extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. The Delaware Study Comment which appears as an annotation fol-

lowing that section of the statute makes it clear that one of the objectives of the section is to effect a departure from the holding of the Delaware Supreme Court in Ciociola v. Delaware Coca-Cola Bottling Co., supra, in which it was held that unless an item was inherently dangerous, a seller or manufacturer would not be liable unless privity of contract existed. Thus, it is not necessary to consider whether the condition complained of and the use of the item at the time would meet the "imminently dangerous" test. "Inherently dangerous" and "imminently dangerous" appear to be used interchangeably.

The implied warranty is that the goods shall be merchantable, i. e., are fit for the ordinary purposes for which such goods are used. 5A Del.C. § 2–314. Under the two sections referred to above, there are two issues which must be determined. The first is whether, under Section 2–318, plaintiff is of the class of persons "who may reasonably be expected . . . be affected by the goods . . .". The second is whether under Section 2–314, the vehicle was fit for the ordinary purposes for which such vehicle is used.

■ With respect to the question of whether plaintiff falls within the class of persons who may reasonably be expected to be affected by the automobile, the automobile was intended to be used on the public highways. Other vehicles, of course, also use the public highways. It is not uncommon for motor vehicles using the public highways to come into contact with other vehicles or pedestrians who use the public highways. In case of collision, users of public highways are affected by other motor vehicles which also use the public highways. Accordingly, the Court concludes that plaintiff is within the class of persons who may reasonably be expected to be affected by the motor vehicle. Hence, the requirement of Section 2–318 is met. The same result would flow from the application of tort law where it is said that a

2. 55 Del.Laws Ch. 349; it appears as Title 5A of the Delaware Code.

**620**

manufacturer may be liable to those whom he should expect to be endangered by the probable use of the product. Restatement of Torts 2d, Section 395, Comment i. Even pedestrians and occupants of other vehicles on the highway come within the protective ambit of that concept. Ibid.

 The second test, as required by 5A Del.C. § 2–318, is whether the vehicle was fit for the ordinary purposes for which such vehicle is used. The manufacturer must exercise reasonable care to produce a product which does not create an unreasonable risk of causing physical harm to those whom he should expect to be endangered by its probable use. Restatement of Torts 2d, Section 395.[3] One facet of this requirement is that the manufacturer have a formula, plan or design which would produce an article which is safe for its reasonable use. Ibid, comment f.

Obviously, a manufacturer is entitled to latitude in the design of his product. On the other hand, his design must give reasonable consideration to the manner in which the product will be used and its effect upon others. 55 California Law Review 660. This must take into consideration normal usage and occurrences during normal usage and should embody a reasonable design to avoid injury under those circumstances.

In Passwaters v. General Motors Corporation, 8 Cir., 454 F.2d 1270 (1972), the manufacturer was held liable where a passenger on a motorcycle was injured when the motorcycle in passing an automobile which had hub caps bearing propellor-like blades came into contact with, but did not forcefully collide with the automobile. Hatch v. Ford, 163 Cal.App.2d 393, 329 P. 2d 605 (1958), involved a child who ran into a stopped car, striking his eye on the radiator ornament on the car; and Kahn v. Chrysler Corporation, S.D.Tex., 221 F. Supp. 677 (1963), involved a child who

was injured when he drove his bicycle into the tail fin of a stopped automobile. It is noted that Passwaters, where recovery was allowed, involved a moving vehicle, while *Hatch* and *Kahn*, where the suits were dismissed, involved stationary vehicles. In the present case, the automobile was either stopped or almost stopped at the time it was struck by plaintiff.

 A number of tests have been devised to determine whether a particular situation renders an automobile manufacturer liable. The test in Schneider v. Chrysler Motors Corporation, 8 Cir., 401 F.2d 549 (1968), was whether the design of a vent window presented "an unreasonable risk of harm". The test of "high risk of harm" was applied, again by the 8th Circuit, in Passwaters v. General Motors, 8 Cir., 454 F.2d 1270 (1972) involving bladelike fins projecting from hub caps. The phrase "substantial and unreasonable risk of injury" was applied in Pike v. Hough, 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970). The test "unreasonable risk of injury" was applied in Mickle v. Blackmon, 252 S.C. 202, 166 S.E.2d 173 (1969). Hatch v. Ford, 163 Cal.App.2d 393, 329 P.2d 605 (1958) applied the test of whether there was a "reasonably foreseeable hazard". I conclude that the proper test is whether the design has created a risk of harm which is so probable that an ordinarily prudent person, acting as a manufacturer, would pursue a different available design which would substantially lessen the probability of harm.

Defendant contends that foreseeability of the hazard is a separate requisite which is not present here. If foreseeability is given the meaning applied in Schneider v. Chrysler, supra, namely, the "probability of harm sufficiently serious so an ordinary reasonable person would take precaution to avoid it", it is inherent in the test which I have stated above. If, on the other hand

3. The Court proceeds on the assumption that the duty of the manufacturer does not differ whether tested according to the statute or un-der the other concepts which have been a basis of manufacturer's liability.

foreseeability merely refers to the ability of a reasonable person to forecast or anticipate that plaintiff's bicycle might crash into the Volkswagen, foreseeability is present because collisions between bicycles and automobiles are sufficiently commonplace. Compare Hunter v. Quality Homes, Del.Super., 6 Terry 100, 68 A.2d 620 (1949).

In the present case, defendant's wrong, if any, apparently lies in its failure to equip the Volkswagen with a parking light which was sufficiently shatter-proof that it would not break under the impact of the bicycle's collision, or if it did break, the resultant fragments would not be sufficiently sharp or hard to cause injury. Plaintiff was riding his bicycle downhill toward the Volkswagen. The impact broke the glass of the parking light. Plaintiff's injury occurred when his knee struck the glass of the parking light.

Defendant's liability depends upon whether it had a duty to provide a parking light which would not break under this impact or which would not severely cut his knee if it broke. The subject of liability based upon the question of "crashworthiness" has received much consideration in recent years. 20 Cleveland State Law Rev. 578; 61 Columbia Law Rev. 1401; 55 California Rev. 645; 118 U.Pa.Law Rev. 299; 71 Mich.Law Rev. 1654. There is serious question whether, and under what circumstances, a manufacturer should be held liable for failure to design the exterior of a vehicle or a part of a vehicle which would remain intact when subjected to external force—at least in the absence of legislation establishing such requirement. 71 Mich.L.Rev. 1668.

Here, the part of the car involved was a light, an essential item on a car, and not mere ornamentation. Of necessity, the lens had to be made of transparent or translucent material. In general, materials which are transparent or translucent are more fragile. Furthermore, the light did not shatter under normal usage, but shattered under impact with metal. The breakage resulted from external force and the injury did not occur to a user of the vehicle.

The Court concludes that defendant did not breach its duty toward the plaintiff who collided with the Volkswagen. Accordingly, the motion of these defendants for summary judgment is granted.

It is so ordered.