# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LUDMILLA PERMINT, et al., )
                                              )
           Plaintiffs, )
                                                )
      v. )     C.A. No. N17C-02-236 VLM
                                                )
KIA MOTORS AMERICA, INC, )
et al., )
                                              )
          Defendants. )
                                              )

## ORDER

Date Submitted and Decided: June 23, 2022
Written Decision Issued: July 1, 2022

*Upon Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial*,
**DENIED**.

Timothy S. Martin, Esq. and Daniel P. Klusman, Esq. of White and Williams, Wilmington, DE, and James P. Feeney, Esq. (*pro hac vice*)[1] of Dykema Gossett PLLC, Bloomfield, MI. *Attorneys for Defendants*.

Jimmy Chong, Esq. of Chong Law Firm, P.A., Wilmington, DE, Michael V. Tinari, Esq. (*pro hac vice*) and Christopher P. Fleming, Esq. (*pro hac vice*) of Leonard, Sciolla, Leonard & Tinari, LLP, Philadelphia, PA. *Attorneys for Plaintiffs.*

**MEDINILLA, J.**

---

[1] Mr. Feeney requested *pro hac vice* admission after trial in this matter and was not the *pro hac* attorney of record at trial.

**AND NOW TO WIT**, this 1st day of July 2022, upon consideration of Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, a New Trial, Plaintiffs' Response in Opposition, oral arguments, and the record in this case, **IT IS HEREBY ORDERED** that Defendants' Motion is **DENIED** for the following reasons:

1. On March 7, 2015, Ludmilla Permint ("Ms. Permint") was driving a 2014 Kia Soul when she was struck by another vehicle in Sussex County. Her husband, Charles Permint ("Mr. Permint"), traveling in the front passenger seat of the vehicle was killed. The couples' young adult son and granddaughter were also traveling in the vehicle. The medical examiner determined Mr. Permint's cause of death was blunt chest trauma. At the time of the accident, Mr. Permint was 74 years old, 5'8" tall, and weighed 240 pounds. Plaintiffs asserted that it was Kia's defective seat belt system — which allowed Mr. Permint to hit his chest on the dashboard — that caused his death.

2. Plaintiffs Ludmilla Permint, Charles Daniel Permint, Julia Rose Johnson, and Imani Rose Johnson, (collectively "Plaintiffs") brought various claims against Defendants Kia Motors Corporation, Kia Motors America, Inc., Selbyville Holly Kia, Felton Automotive Group LLC d/b/a Selbyville Holly Kia, and TM & JE, LLC (collectively "Defendants").

3.	On March 18, 2022, following a two-week jury trial, the jury found negligence against Defendants Kia Motors Corporation and/or Kia Motors America, Inc. for the negligent design of the seatbelt/restraint system.  The jury also found all Defendants negligent in failing to warn Mr. Permint in connection with the system.  The jury found that either the negligent design or the negligent warning was a proximate cause of harm to Mr. Permint and awarded $1,600,000 in compensatory damages.[2]

4.	Defendants filed this Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial, on April 1, 2022.  Plaintiffs responded on April 25, 2022.  Oral arguments were held on June 22, 2022.  The matter is ripe for consideration.

## Party Contentions

5.	Defendants contend they are entitled to judgment as a matter of law on both the negligent design claim and the negligent warning claim because Plaintiffs did not establish a *prima facie* case and a jury could not reasonably find in Plaintiffs favor on these claims.[3]  For the negligent design claim Defendants argue that

---

[2] *See* Verdict Form, D.I. 449 [hereinafter Verdict Form].  The jury apportioned this sum to Mr. Permint's wife, son, daughter and granddaughter at 65%, 15%, 10%, and 10%, respectively.  *See id.* at 5.

[3] Defendants' Renewed Motion for Judgment as a Matter of Law Or, in the Alternative, A New Trial, D.I.456, at 1 [hereinafter Defendants' Renewed Motion].

Plaintiffs failed to prove: (1) the standard of care and Defendants' departure from it,[4] and (2) proximate cause.[5] As to the negligent warning claim, Defendants assert Plaintiffs failed to "offer evidence to prove *any* of [the necessary] elements."[6] In the alternative, Defendants contend they are entitled to a new trial because (1) the jury returned an inconsistent verdict;[7] (2) the Court made erroneous evidentiary rulings;[8] and (3) the jury was improperly instructed.[9]

6.      Plaintiffs assert they met their burden of proof for both the negligent design and negligent warning claims.[10] As to the former, that they proved "Defendants failed to use reasonable care, skill, and diligence in designing [the occupant restraint system],"[11] that proximate cause was established through the testimony of two expert witnesses,[12] and that Plaintiffs were not required to establish a departure from a federal or industry standards to prove their negligent design claim.[13] In response to the negligent warning claim, Plaintiffs maintain that sufficient facts were submitted to the jury that Defendants should have known of the

---

[4] *Id.* at 2.
[5] *Id.* at 5.
[6] *Id.* at 6.
[7] *Id.* at 7–9.
[8] *Id.* at 9.
[9] *Id.* at 10–11.
[10] Plaintiffs' Response to Defendants' Renewed Motion for Judgment as a Matter of Law Or, in the Alternative, a New Trial, D.I. 464, at 1–10 [hereinafter Plaintiffs' Response].
[11] *Id.* at 2.
[12] *Id.* at 7.
[13] *Id.* at 5.

dangers of the occupant restraint system,[14] and that a warning, if given, would have been heeded.[15]  Finally, Plaintiffs assert Defendants fail to establish any grounds for a new trial.[16]

## Discussion

### A. Judgment as a Matter of Law Under Rule 50

7.    Under Delaware Superior Court Civil Rule 50, a party is entitled to judgment as a matter of law where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[17]  When considering a motion for judgment as a matter of law, "'the Court does not weigh the evidence but, rather views the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences therefrom . . . .'"[18]  A jury verdict should not be disturbed where "under any reasonable view of the evidence the jury could have justifiably found for [the non-moving party]."[19]

---

[14] *Id.* at 10; 10 n.18.

[15] *Id.* at 11.

[16] *Id.* at 12.

[17] Del. Super. Ct. Civ. R. 50.

[18] *Bullock v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 1980806, *4 (Del. Super. May 18, 2012) (quoting *Drayton v. Price,* 2010 WL 1544414, at *4 (Del. Super. Apr. 19, 2010)).

[19] *Mazda Motor Corp. v. Lindahl*, 706 A.2d 526, 530 (Del. 1998) (quoting *Parks v. Ziegler,* 221 A.2d 510, 511 (Del. 1966)).

8.      Defendants assert that Plaintiffs failed to establish a *prima facie* case on both the claims of negligent design and negligent warning, such that no reasonable jury could find for Plaintiffs on either claim.  The Court addresses each claim in order.

### *The Negligent Design Claim – Prima Facie Established*

9.      To succeed on a negligent design claim, a plaintiff must establish each element of a negligence claim – duty, breach, proximate cause, and damages.[20] Under Delaware common law, "[n]egligent behavior is usually defined as the failure to meet the standard of care which the law requires."[21]  The standard of care in a negligent design case is that of an ordinarily prudent manufacturer.[22]  The plaintiff also must show the injury was proximately caused by the defendant's negligent conduct.[23]  In other words, the plaintiff must show a "causal nexus" between the injury and the defendant's conduct.[24]  Causation is ordinarily to be decided by the trier of fact.[25]

10.     Defendants argue that a deviation from the applicable standard of care was not established at trial because Plaintiffs did not prove Defendants deviated from

---

[20] *Allen v. IBM*, 1997 U.S. Dist. LEXIS 8016, at *138 (D. Del. May 19, 1997).
[21] *Furek v. University of Delaware*, 594 A.2d 506, 516 (Del. 1991).
[22] *Nacci v. Volkswagen of Am. Inc.*, 325 A.2d 617, 620 (Del. Super. 1974).
[23] *Money v. Manville Corp. Asbestos Disease Compensation Trust Fund*, 596 A.2d 1372, 1375 (Del. 1991) (citing *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991)).
[24] *Id.* at 1376.
[25] *Id.* at 1375.

"any objective standard from 2013," citing examples of "a federal regulation or safety standard, or an industry practice, custom, or norm."[26]

11. Under Delaware case law, compliance with regulations or standards may serve as "some evidence of due care."[27] However, the existence or absence of such compliance is not dispositive.[28] Accordingly, Plaintiffs were not required to establish a deviation from any standard other than that of "an ordinarily prudent person, acting as manufacturer."[29]

12. The pattern jury instruction for negligent design was an accurate statement of law. As the Court stated during oral arguments on this Motion, Defendants did not object to this jury instruction as given. The permissive language in the instruction expressly states that the jury "may" consider various factors such as compliance with government regulations or industry standards, but the jury was not obligated to do so. Moreover, Defendants did not object to it, and therefore the argument is waived.[30] Defendants' argument was a constant throughout the case,

---

[26] Defendant' Renewed Motion, at 4.

[27] *Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716, 720 (Del. 1981).

[28] *See e.g.*, *Massey-Ferguson, Inc. v. Wells*, 383 A.2d 640, 642 (Del. 1978) (holding the proper standard in the case was that of "reasonably prudent manufacturer under all the circumstances" and the lack of "evidence of industry-wide standards [was] not fatal.").

[29] *Nacci*, 325 A.2d at 620.

[30] *See Wolhar v. General Motors Corp.*, 1998 WL 472785, at *3 (Del. Super. July 1, 1998) (finding the plaintiffs failed to object to interrogatories or the verdict form during the trial and "have therefore waived their right to contest [the same]").

rehashed, and remains unavailing without the requisite support of legal authority to convince otherwise.

13. Even if Plaintiffs were required to present such evidence to establish a *prima facie* claim, they did so. Plaintiffs' experts John Yannaccone and Scott Batterman provided evidence that Defendants deviated from the appropriate standard of care and this deviation was the proximate cause of Mr. Permint's death. Mr. Yannaccone opined that Defendants had multiple design alternatives for the seat belt system,[31] including "raising the threshold on the load limiter"[32] or incorporating a "stop" feature.[33] And that the failure to implement any of the available alternatives resulted in a system that was "unsafe and unusually dangerous for large occupants."[34] Mr. Batterman testified that Mr. Permint's death would have been prevented with the incorporation of a "stop" in the vehicle design and Defendants' design failed to meet acceptable engineering standards.[35]

14. The next argument relates to proximate cause. Defendants assert proximate cause was not established because the *"only evidence"* presented at trial came from Charlie Permint ("Charlie"),[36] Mr. Permint's autistic son. This is

---

[31] Trial Testimony of John Yannaccone, March 9, 2022, Morning Session, at 30:3-8.
[32] *Id.* at 30:10-11.
[33] *Id.* at 31:13-18.
[34] *Id.* at 32:13-15.
[35] *See* Trial Testimony of Scott Batterman, March 9, 2022, Afternoon Session.
[36] Defendants' Reply in Support of its Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial, D.I. 471, at 3 [hereinafter Defendants' Reply].

incorrect where two medical experts provided testimony as to causation, namely Drs. Neal Skop and Adrienne Sekula-Perlman. Both testified that the impact of Mr. Permint's chest with the dashboard of the vehicle caused cardiac injury and Mr. Permint's death.[37]

15. Yet, Defendants suggest that Charlie Permint's testimony was "wholly unreliable,"[38] and challenge the veracity his testimony. The first challenge is that Charlie incorrectly testified that he saw his father hit the dashboard and then get "destroyed" by the airbag.[39] Defendants provide no factual basis to assert this statement is incorrect. That they disagree with the testimony is not grounds for summary judgment.

16. The second challenge is that Charlie made an incorrect statement that his dad hit is head in the accident because the medical examiner did not find evidence of an injury to Mr. Permint's head.[40] Defendants fail to recall that their own witness, Jonathan Timmons, a paramedic who responded to the scene of the accident on March 7, 2015,[41] noted an injury to Mr. Permint's head.[42] This corroborates Charlie's testimony. Charlie also testified that he saw his father hit the dashboard

---

[37] *See* Trial Testimony of Dr. Neal Skop, March 8, 2022, Afternoon Session, at 24:10-19; Trial Deposition of Dr. Adrienne Sekula-Perlman, at 16:24-17:4.
[38] Defendant's Reply, at 3.
[39] *Id.* (citing Trial Testimony of Charlie Permint, March 7, 2022, Morning Session, at 130:10-23).
[40] *Id.*
[41] Trial Testimony of Jonathan Timmons, March 15, 2022, at 100.
[42] *Id.* at 111; 120–21.

with his chest.[43]   Again, this is corroborated by the two medical experts previously mentioned.

17.   Based on the testimony presented at trial, a jury could reasonably find that the seatbelt restraint system was negligently designed and served as the proximate cause of Mr. Permint's death.

### *The Negligent Warning Claim - Prima Facie Established*

18.   Defendants next assert Plaintiffs failed to "offer evidence to prove *any* of [the necessary] elements" required to establish a *prima facie* negligent warning claim.[44]

19.   It is well-established under Delaware law that in a negligence-based products liability case, "the manufacturer's duty to warn is dependent on whether it had knowledge of the hazards associated with its product."[45]   Actual knowledge is not required.[46]   The determination of what defendant should have known "is a function of what a reasonably prudent individual would have known under the pertinent circumstances at the time in question."[47]   No duty to warn exists where the user has actual knowledge of the danger.[48]   Also, the plaintiff must show that if an

---

[43] Trial Testimony of Charlie Permint, March 7, 2022, Morning Session, at 123:18-20; 125:2-7; 130:1-17; 139:23-140:6.
[44] Defendants' Renewed Motion, at 6.
[45] *In re Asbestos Litigation (Colgain)*, 799 A.2d 1151, 1152 (2002).
[46] *Id.*
[47] *Id.* at 1153 (citing *Graham v. Pittsburgh Corning Corp.,* 593 A.2d 567, 568 (Del. Super. 1990)).
[48] *In re Asbestos Litigation (Mergenthaler)*, 542 A.2d 1205, 1212 (Del. Super. 1986).

10

adequate warning had been given, it would have made a difference.[49] In other words, the plaintiff must show that the injury would not have occurred.[50]

20.     Contrary to Defendants' assertion that Plaintiffs have not established "any of these elements," evidence was presented to the jury to support this claim. The jury heard through Mr. Yannaccone that Kia crash tests showed an increased risk that a larger individual could strike the dashboard in an accident.[51] He testified, and the jury was free to consider, that Defendants should have therefore known of the dangers that a larger individual such as Mr. Permint at 240 lbs. would be at greater risk to strike the dashboard, as proven here.

21.     Plaintiffs also presented evidence that the Permints had no actual knowledge of this risk such that a jury could find an adequate warning was required. Ms. Permint testified that Mr. Permint was a "real stickler for the law"[52] and "[y]ou wore [a seatbelt] no matter what."[53] She further testified that if she and Mr. Permint had known of the risks associated with the seatbelt for a larger individual, they would not have purchased the car.[54] Therefore, sufficient evidence existed from which a

---

[49] *Smith v. Chrysler Corp.*, 1996 WL 945018, at *3 (Del. Super. Oct. 25, 1996).
[50] *Id.* at *4.
[51] Trial Testimony of John Yannaccone, March 9, 2022, Morning Session., at 15:10-16:16; 26:12-27:1.
[52] Trial Testimony of Ludmilla Permint, March 7, 2022, Afternoon Session, at 30:13.
[53] *Id.* at 30:16.
[54] *Id.* at 31:1-7.

jury could reasonably find that the Permints would have heeded a warning if one had been provided.

22.   For these reasons, Defendants have not established they are entitled to judgment as a matter of law under Rule 50.

## B. New Trial Under Rule 59

23.   Under Delaware Superior Court Civil Rule 59, a new trial may be granted for all, or part of the issues decided at trial.[55]  Great deference is accorded a jury's finding[56] and a "jury's verdict is presumed to be correct."[57]  When determining whether a new motion should be granted, "the [j]udge must weigh the evidence in order to determine if the verdict was one which might have reasonably been reached."[58]  A verdict should not be disrupted unless it is "manifestly and palpably against the weight of the evidence,"[59] the jury disregarded applicable rules of law, or the verdict was "tainted by legal error during trial."[60]

24.   Defendant raises three arguments as to why they should be granted a new trial.  First, that the jury made a mistake and returned an inconsistent verdict.

---

[55] Del. Super. Ct. Civ. R. 59.

[56] *In re Asbestos Litigation (Henderson)*, 2011 WL 684164, at *4 (Del. Super. Feb. 2, 2011) (citing *Young v. Frase,* 702 A.2d 1234, 1236 (Del. 1997)).

[57] *Galindez v. Narragansett Hous. Associates, L.P.*, 2006 WL 3457628, at *1 (Del. Super. Nov. 28, 2006).

[58] *McCloskey v. McKelvey*, 174 A.2d 691, 693 (Del. Super. 1961).

[59] *Id.*

[60] *In re Asbestos Litigation (Henderson)*, 2011 WL 684164, at *4.

Second, that the Court made erroneous evidentiary rulings. And third, that this Court improperly instructed the jury. The Court considers each in turn.

### *The Jury Verdict Is Not Inconsistent*

25.     When determining whether a jury returned an inconsistent verdict, the court must weigh the evidence to determine if the verdict reached was reasonable.[61] A verdict may be set aside and a new trial granted if the court concludes that "the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted."[62] A new trial may also be granted where the verdict "resulted from the jury's disregard for applicable rules of law, or was tainted by legal error during trial."[63] Yet a verdict will not be set aside as inconsistent "so long as there is *any* possible interpretation or explanation which avoids the inconsistency."[64]

26.     Defendants argue a new trial is warranted because the jury returned an inconsistent verdict in finding both that the 2014 Kia Soul was not unmerchantable and that Defendants were negligent in the design of the seatbelt system.[65] Defendants assert that "the jury was in fact confused"[66] because the jury's verdict

---

[61] *McCloskey*, 174 A.2d at 693.
[62] *Id.* at 694.
[63] *In re Asbestos Litig.*, 2011 WL 684164, at *4 (citing *Crist v. Connor*, 2007 WL 2473322, at *1 (Del. Super. Aug. 31, 2007)).
[64] *Citisteel USA, Inc. v. Connell Ltd. P'ship*, 712 A.2d 475 (Table), 1998 WL 309801, at *4 (Del. May 18, 1998).
[65] Defendants' Renewed Motion, at 8.
[66] *Id.* at 11.

13

resulted in an "irreconcilable inconsistency."[67] And that a jury could not reasonably find Defendants liable for negligent design and failure to warn yet also find the vehicle was merchantable. This argument is untimely and without merit.

27. First, Defendants failed to object to the special verdict form. Nor did they make any request to modify the form consistent with this position. In fact, both parties rejected the Court's recommendations regarding the merchantability question and asked for it to remain as Defendants had initially drafted it. Accordingly, any such argument to contest the verdict form is waived.[68]

28. Even if considered, before addressing Defendants' argument with respect to the jury's verdict as to the merchantability (of the vehicle) and the negligent design (of the seatbelt and/or restraint system), it is important to look at the language in the verdict sheet as it relates first to the negligence claims.

29. The verdict sheet's first three questions related to whether Defendants were negligent. The jury found Defendants negligent in the design of the seatbelt and/or restraint system, and negligent in failing to warn Mr. Permint in connection with that system.[69]

---

[67] *Id.*

[68] *See Wolhar*, 1998 WL 472785, at *3 (finding the plaintiffs failed to object to interrogatories or the verdict form during the trial and "have therefore waived their right to contest [the same]").

[69] The jury determined that the Defendant Kia Motors Corporation was not negligent in manufacturing the system. But questions two and three asked: "Do you find that Kia Motors Corporation and/or Kia Motors America, Inc. was/were negligent in the design of the seatbelt and/or restraint system of the 2014 Kia Soul?" and "Do you find that Kia Motors Corporation, Kia Motors America and/or Selbyville Holly Kia's conduct was negligent in failing to warn Mr.

14

30.     After they answered three separate questions as to negligence, they were asked to proceed to the proximate cause question that asked "[i]f you answered yes to *either* questions 1 [manufacturer], 2 [negligent design] or 3 [failure to warn], do you find that the…conduct was a proximate cause of harm to Mr. Permint?"[70] The jury answered affirmatively.  Therefore, the jury found that negligent design *or* failure to warn was the proximate cause of death.

31.     The jury was not asked to differentiate whether the negligent design or failure to warn was the proximate cause of death.  Thus, any attempt to review whether there is an inconsistency between their answer regarding the merchantability (of the vehicle) and the negligent design (of the seatbelt system) would require a determination that the jury expressly found proximate cause based *solely* due to the negligent design.  It would be improper for the Court to differentiate whether the negligent design or the failure to warn was the proximate cause of Mr. Permint's death where the form of the question does not so distinguish.

32.     Even if it were clear that the jury made its proximate cause determination due to negligent design, there is no inconsistency in the verdict.  Different theories of liability were presented to the jury with distinct elements of

---

Permint in connection with the seatbelt and/or restraint system of the 2014 Kia Soul?"  The jury answered in the affirmative to both.  *See* Verdict Form, at 2.
[70] *Id.* at 3.

15

proof and the jury instructions set forth the elements properly. And again, Defendants did not object to the instructions.

33. Implied warranty of merchantability is a UCC claim (contractual in nature) where the jury was asked to consider whether there was a breach of an implied promise at the time the vehicle was sold to Plaintiffs. The negligent design claim, on the other hand, focuses on whether Defendants acted reasonably in designing the seatbelt/restraint system. And the failure to warn claim focuses on whether Defendants knew or should have known about a risk of harm.

34. Defendants cite to *Newcomer v. Burkholder*[71] and assert that if the Kia vehicle was found to be merchantable, then it cannot be said to be defective and therefore there is no basis for a determination that Mr. Permint's death resulted from negligent design or warning. This reliance is misplaced. *Newcomer* was in a different procedural posture on an unrelated issue. There, on a Motion for Summary Judgment, the Court was asked to determine whether expert testimony was required. That case did not concern a motion for a new trial. Furthermore, the *Newcomer* Court distinguishes between the elements which must be proven for the implied warranty of merchantability claim and the negligence claims and further establishes that proof of a defect "is not always an essential element of a negligence claim."[72]

---

[71] 2016 WL 6875961 (Del. Super. Nov. 22, 2016).
[72] *See id.* at *3.

Thus, distinguishing warranty claims from negligence claims. The same applies here.

35. The verdict sheet distinguishes between the vehicle in its entirety and the specific seatbelt/restraint system.[73] The first questions involved negligence claims as to the negligent design and failure to warn specifically as to the seatbelt/restraint system. The question regarding merchantability is the warranty UCC claim that addresses the vehicle generally. Accordingly, the jury was instructed to answer the first two questions as to the negligence of the seatbelt system whereas the merchantability question was as to whether that particular "good" (the vehicle) would "pass without objection in the trade under the contract description…."[74] But the elements for breach of warranty and negligence are different and reasonable explanations exist that reconcile the jury's verdict. The jury verdict is not inconsistent. The verdict will not be disturbed.

### The Court's Evidentiary Rulings Were Not Improper

36. Defendants next argue that the Court made "erroneous rulings" which "substantially prejudiced Defendants' ability to mount a defense" and are thus

---

[73] Although Verdict Form Question 2 asks "Do you find [Defendants] negligent in the design of the seatbelt and/or restraint system of the 2014 Kia Soul…" and Question 3 asked "Do you find [Defendants] negligent in failing to warn Mr. Permint in connection with the seatbelt and/or restraint system of the 2014 Kia Soul...," Question 5, presented after the negligence/proximate cause questions asked "Was the 2014 Kia Soul unmerchantable?" *See* Verdict Form, D.I. 449, at 2–3.

[74] *See* Jury Instructions, D.I. 446, at 22.

entitled to a new trial.[75] Defendants do not specify how they were substantially prejudiced, nor do they provide any legal authority to support their position that the Court's rulings were improper.

37.     First, Defendants assert that the Court improperly excluded Defendants' use of Defendant's mockup of a front-passenger compartment of a vehicle, referred to as the "buck."  The claim is that this Court "ruled even before seeing it,"[76] and later that the Court viewed the "buck" but did not ask any questions.[77]  Both assertions are incorrect.  The Court viewed it and asked several questions of defense counsel.  Prior to making its ruling, the Court considered Defendants' timing in presenting the "buck" to Plaintiffs' counsel, the anticipated use of the "buck," Plaintiffs' numerous objections to its use, other similar evidence already expected to be presented to the jury and conducted a 403 analysis. Defendants' disagreement with the Court's ruling is not a sufficient basis for a new trial.

38.     Second, Defendants argue that Plaintiffs' experts Sonya Mocarski, M.S. and Andrew Verzilli, M.B.A. provided improper testimony, causing the jury to

---

[75] Defendants' Renewed Motion, at 9.
[76] *Id.*
[77] Defendants' Reply, at 5–6.

be "left to speculate about how to divide the damages" between those caused by the crash and those caused by the load limiter.[78]

39.     As previously stated in the Court's ruling on Defendants' motions *in limine* to exclude these experts, the testimony of both experts were admissible under D.R.E. 702 as they were relevant to the case[79] and reliably applied in a manner accepted by experts in their respective fields.[80]  The experts' testimony provided how they arrived at their respective opinions and were supported by various materials.  Their expert testimonies did not leave the jury to speculate and were admissible under the rules of this Court.  Even if an evidentiary foul was committed, it is not a basis to disrupt the jury's verdict.

40.     Third, Defendants argue that the Court precluded relevant evidence of the New Car Assessment Program ("NCAP") testing.[81]  No further written argument is provided as to why this results in a new trial, nor was any explanation offered during oral argument.  As stated on the record, the Court found the documents were not properly authenticated.[82]  The MGA report was not relevant.  It was created after the 2014 Kia Soul was designed by a non-party agency and not reviewed prior to

---

[78] Defendants' Renewed Motion, at 9.
[79] *See Estate of Valdez v. BNSF Railway Co.*, 2020 WL 7365800, at *4 (Del. Super. Dec. 15, 2020) (citing *Tumlinson v. Advanced Micro Devices, Inc.*, 2013 WL 7084888, at *2 (Del. Super. Oct. 15, 2013)) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).
[80] *See Nelson v. State*, 628 A.2d 69, 74 (Del. 1993).
[81] Defendants' Renewed Motion, at 9.
[82] Trial Transcript, March 16, 2022, Afternoon Session, at 6:8-7:22.

designing the vehicle in question.[83] The reports, which were over 500 pages, did not provide a benefit to the jury and were inadmissible.[84] This evidentiary ruling does not form a basis for a new trial.

41. Fourth, Defendants argue their experts were restricted to the four corners of their reports while Plaintiffs were permitted to testify beyond their respective reports.[85] This argument appears to be based on the Court's pre-trial order regarding a motion *in limine* filed by Plaintiffs.[86] Contrary to Defendants' assertions, the Court did not permit Plaintiffs' experts the ability to testify beyond what is permitted by the rules of this Court, and the February 11, 2022, Order did not grant Plaintiffs' experts the ability to do so.[87] These evidentiary challenges are not sufficient to warrant a new trial.

### *The Jury Was Properly Instructed*

42. A new trial is warranted where an "alleged deficiency in the jury instructions undermined the jury's ability to intelligently perform its duty in

---

[83] *Id.* at 8:5-9:2.

[84] *Id.* at 9:3-10:4.

[85] Defendants' Renewed Motion, at 9.

[86] *See id.* at 9 n.7.

[87] Corrected Order, D.I. 389 (correcting this Court's Feb. 3, 2022, Order to properly reflect Defendants experts cannot provide testimony or opinion beyond the scope of their reports but Defendants are not precluded from cross-examination of Plaintiffs' witnesses or making any arguments supported by the evidence).

returning a verdict."[88] "[T]he jury instructions must be viewed as a whole."[89] No error occurs if the jury instruction "is 'reasonably informative and not misleading, judged by common practiced and standards of verbal communication.'"[90] "A party has no right to contest the particular language of an instruction so long as the instruction correctly states the law."[91] A party also has no right "to a fixed sequence of instructions . . . ."[92]

43.     First, Defendants argue that the Court disregarded the model jury instructions where it "did not read the elements that Plaintiffs were required to prove by a preponderance of the evidence."[93] This is incorrect. The Court read the burden of proof instruction to the jury. At oral argument, defense counsel conceded it made a mistake, suggesting the entire allegation was a "scrivener's error" and should have been deleted from their pleading.

44.     Second, Defendants assert that the Court refused to instruct the jury that Plaintiffs "must prove what the standard of care was, and that each defendant breached [it]."[94] This is incorrect. A pattern jury instruction was provided as to the

---

[88] *Culver*, 588 A.2d at 1098.
[89] *Probst v. State*, 547 A.2d 114, 119 (Del. 1988) (citing *Flamer v. State*, 490 A.2d 104, 128 (Del. 1984)).
[90] *Id.* (quoting *Baker v. Reid*, 57 A.2d 103, 109 (Del. 1947)).
[91] *Wolhar*, 1998 WL 472785, at *3 (citing *Culver*, 588 A.2d at 1096).
[92] *Id.* (citing *Franklin v. Salimen*, 222 A.2d 261, 263 (Del. 1966)).
[93] Defendants' Renewed Motion, at 11.
[94] *Id.*

applicable standard of care and the jury was further instructed that each defendant must be judged independently on the negligence claims.

45.     Third, Defendants argue it was incorrect for the Court to not instruct the jury that Plaintiffs must prove Defendants departed from some objective standard of care, such as industry standards.[95]   The instruction as given complies with Delaware law and was taken directly from this Court's pattern civil jury instructions. Defendants failed to object to this instruction and therefore the argument is waived. Also, Defendants made the same argument in their motion for summary judgment and were informed this is not the law in the State of Delaware.  That remains true today.[96]

46.     Fourth, Defendants argue the *in loco parentis* instruction was improper.[97]  The Court's instruction complies with Delaware law.[98]  Defendants were asked at the prayer conference and failed to provide any authority to support their argument.  The jury was permitted to determine if Mr. Permint stood in *loco parentis* to his granddaughter for purposes of awarding the 10% damage award it determined appropriate.

---

[95] *Id.*
[96] *See, e.g., Burrows*, 435 A.2d at 720; *Wells*, 383 A.2d at 642; *Delmarva Power & Light v. Stout*, 380 A.2d 1365, 1368 (Del. 1977).
[97] Defendants' Renewed Motion, at 11.
[98] *See Lisowski v. Bayhealth Med. Ctr., Inc.*, 142 A.3d 518 (Del. Super. 2016); *Spencer v. Goodill*, 2009 WL 3823217 (Del. Super. Nov. 13, 2009).

22

47. Fifth, Defendants assert the jury was not properly instructed on damages where the instructions made no distinction between damages from the crash and those from the seatbelt system.[99] Defendants failed to raise this argument prior to this Motion, nor did they object to the pattern jury instruction as to damages. Therefore, this argument is waived.

48. The jury instructions were proper statements of law. Any argument regarding flaws within is either incorrect or fails to provide a basis for granting a new trial.

49. For these reasons, Defendants have not established they are entitled to a new trial under Rule 59.

## CONCLUSION

Defendants fail to establish entitlement to judgment as a matter of law under Rule 50 or a new trial under Rule 59. Therefore, Defendants' Renewed Motion for Judgement as a Matter of Law or, in the Alternative, a New Trial **DENIED**.

**IT IS SO ORDERED**.

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

cc:     Prothonotary

---

[99] Defendants' Renewed Motion, at 11.

23