# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PATRICIA FARLEY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | C.A. NO. N17C-12-265 DJB |
| | ) | |
| BONEFISH GRILL, LLC, | ) | |
| | ) | |
| Defendant(s). | ) | |

## OPINION

### *On Plaintiff's Renewed Motion for New Trial with Spoliation Instruction - DENIED*

Date Argued: November 21, 2022
Date Decided: February 22, 2023

Sean Gambogi, Kimmel, Carter, Roam, Peltz & O'Neill, P.A., Wilmington, Delaware; *for Plaintiff.*

Kevin Connors, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware; *for Defendant.*

**BRENNAN, J.**

## I.  INTRODUCTION

Patricia Farley (hereinafter "Plaintiff") filed this Motion for a New Trial following a jury verdict in favor of Defendant Bonefish Grill, LLC (hereinafter "Defendant").  Plaintiff filed suit against Defendant, claiming it negligently failed to clean the floor of its restaurant, which caused her to fall and resulted in injuries.  At trial, it was disclosed for the first time, via the restaurant manager's testimony, that the restaurant had been equipped with multiple surveillance cameras, despite multiple discovery requests regarding the existence of surveillance.

Plaintiff's Motion for New Trial seeks a spoliation instruction, as all parties agree that any video from inside of the restaurant no longer exists.  The trial judge deferred a decision on the motion pending further discovery into the matter.[1]  Discovery is now complete, and the matter is ripe for adjudication.  For the following reasons, Plaintiff's Renewed Motion for New Trial with Spoliation Instruction is **DENIED**.

## II.  BACKGROUND

Plaintiff slipped and fell at a Bonefish restaurant on April 18, 2017.  Shortly after the fall, John F. White (hereinafter "White"), an insurance claims adjuster for Defendant, initiated an investigation into the incident.  As part of the investigation,

---

[1]     In between the date of trial and the filing of the instant motion, the Trial Judge retired and a new presiding Judge was assigned.

White emailed restaurant management seeking to review video surveillance, if any, of the incident but did not receive a response.[2] On April 25, 2017, White denied Plaintiff's claim for compensation.[3] On December 19, 2017, Plaintiff initiated the instant action, alleging Defendant was negligent in maintaining and supervising its property, which caused her fall and resulting injuries.[4]

During pretrial discovery, Defendant responded to Form 30 Interrogatory Responses. Relevant here, Question #4 requested Defendant "[i]dentify all photographs, diagrams, or other representations made in connection with the matter in litigation…."[5] In response, Defendant represented there were photographs of the incident, but did not disclose there were security cameras on its premises.[6]

On January 31, 2018, Plaintiff served Bonefish with additional interrogatories and requests for production, and specifically sought, "[c]opies of any photographs and/or videos of the accident scene."[7] In response, Defendant attached five photographs but did not provide any video or inform Plaintiff of the presence of

---

[2]    Pl.'s Mot. for New Trial, Ex. F at 35 – 36, Aug. 19, 2022 (D.I. 132). White's claim notes reflect that his email went unanswered. However, White could not recall whether a Bonefish employee responded to his request over the phone or in some other manner. *Id.* at 40 - 48.
[3]    *Id.*, Ex. A (D.I. 132).
[4]    D.I. 1.
[5]    D.I. 6.
[6]    *Id.*
[7]    Pl.'s Mot. for New Trial, Ex. C (D.I. 132); Request for Product #5.

security cameras on its premises.[8] Interrogatory #47 asked, "[w]as any video of the Plaintiff and/or the accident scene captured on the day of the accident within the restaurant?"[9] Defendant simply responded, "No."[10]

The case proceeded to trial on October 21, 2019. Ryan Parsley (hereinafter "Parsley"), a manager of the Bonefish restaurant at the relevant time, testified the restaurant was equipped with "about nine" surveillance cameras.[11] Parsley could not recall what specific areas of the restaurant were under surveillance, and when asked if he reviewed any video footage during his investigation of Plaintiff's fall, Parsley stated "I do not believe so."[12]

Plaintiff's counsel objected and sought a spoliation instruction at that time based upon Defendant's failure to disclose and preserve any video surveillance from the day of the incident. The trial judge denied Plaintiff's request, finding the record as it then-existed insufficient to support a finding that Defendant intentionally or recklessly failed to preserve the video footage.[13] After a four-day trial, the jury returned a verdict in favor of Defendant.

---

[8]     *Id.*
[9]     *Id.*
[10]    *Id.*
[11]    Parsley Dep. at 77, Nov. 20, 2019 (D.I. 56).
[12]    *Id.* at 35, 77.
[13]    Prayer Conference Tr. at 39, Nov. 18, 2019 (D.I. 52).

Following the verdict, Plaintiff informed opposing counsel of her intent to move for a new trial and requested further information regarding the status of the video cameras and the footage recorded on the day of the incident. On October 30, 2019, Defense counsel replied:

> My client has advised that video footage for any given day is only kept for 21 days. Thus, when plaintiff requested the video of plaintiff and/or the incident site, [Defendant] correctly advised that it had none. In addition, [Defendant] did not have 9 cameras, so that former employee Ryan Parsley's recollection of that number at trial was inaccurate. Lastly, my client has confirmed that no camera was focused upon the location of plaintiff's fall in any event.[14]

That same day, Plaintiff moved for a new trial.[15] In response, the trial Court deferred decision on the motion and permitted limited discovery into the location of the cameras to expand the record regarding the spoliation issue.[16]

During post-trial discovery, Defendant admitted that no individuals reviewed or preserved a copy of the surveillance footage captured on April 18, 2017.[17] Defendant further stated that all video surveillance is systematically overwritten after 21 days.[18] Concerning the placement of its cameras, Defendant revealed the restaurant was equipped with a total of six (6) cameras. Two of the six were outdoor

---

[14] Def.'s Resp. to Mot. for New Trial, Ex. J, Dec. 9, 2019 (D.I. 58).
[15] D.I. 49. Plaintiff subsequently filed a revised motion for new trial on December 2, 2019. D.I. 57.
[16] Def.'s Resp. in Opp'n, Ex. H at 43 - 45, Sept. 19, 2022 (D.I. 138).
[17] *Id.*, Ex. I at Interrog. #1-2.
[18] *Id.* at Interrog. #3.

cameras, with one facing the main entrance and the other facing the back door to the restaurant. The remaining four (4) were interior cameras, which captured the bar, the manager's office, a back hallway, and the back of the kitchen/mop station.[19] There were no cameras within the restaurant that covered the main dining area where Plaintiff had fallen.

In addition to the supplemental discovery responses, Plaintiff took the deposition of John White, the insurance claim adjuster, and Adam Lavin, the managing partner of the Bonefish restaurant at the time of the incident. Additionally, Plaintiff retained an expert to opine on the standard of care for a business in retaining and reviewing video. Plaintiff's expert opined Defendant should have retained and reviewed the now-debated video.

## III. STANDARD OF REVIEW

Under Superior Court Rule 59(a), "[a] new trial may be granted … for any of the reasons for which new trials have heretofore been granted in the Superior Court."[20] This Court has discretion to grant a motion for new trial in the interest of avoiding injustice.[21] In exercising its discretion, the "Court must determine that the

---

[19] *Id.*, Ex. K.
[20] Del. Super. Ct. Civ. R. 59(a).
[21] *McCloskey v. McKelvey*, 174 A.2d 691, 693 (Del. Super. 1961) (internal citation omitted).

6

verdict is manifestly and palpably against the weight of the evidence, or for some reason justice would be miscarried if the decision were to stand."[22]

## IV. DISCUSSION

Plaintiff maintains that a spoliation instruction, and thus a new trial, is warranted because Defendant was aware of Plaintiff's injury claim, but negligently failed to review or preserve any camera footage from the day of the incident. Further, Plaintiff contends that Defendant was negligent because they were on notice of the potential relevance of any surveillance video because the insurance adjuster specifically requested it during the claim investigation.

In response, Defendant argues that Plaintiff requested footage of the fall scene and any video of Plaintiff inside the restaurant, which did not exist since none of the video captured the area of the fall. Defendant supports the contention that no such video could have existed based upon the placement of cameras throughout the restaurant. As a result, Defendant claims that it could not have intentionally or recklessly destroyed evidence that did not exist. Second, Defendant claims that any video recorded on the day of the incident is irrelevant because it would not show Plaintiff's fall or any circumstances surrounding Plaintiff's fall.

---

[22] *Optical Air Data Sys., LLC v. L-3 Commc'ns Corp.*, 2020 WL 2563698, at *2 (Del. Super. Ct. May 21, 2020) (citing *McCloskey*, 174 A.2d at 693).

The Delaware Supreme Court set forth the standard for when an adverse inference instruction regarding spoliation is appropriate in its 2006 decision in *Sears, Roebuck, & Co. v. Midcap*. In its decision, the Court ruled that "[a]n adverse inference instruction is appropriate where a litigant intentionally or recklessly destroys evidence, when it knows that the item in question is relevant to a legal dispute or it was otherwise under a legal duty to preserve the item."[23] The party seeking the adverse inference must also "make some showing that the allegedly destroyed evidence existed and supported the aggrieved party's position."[24]

Even without a finding that Defendant intentionally or recklessly destroyed the April 18, 2017, surveillance footage, any now-overwritten video that existed at the time of Plaintiff's fall is not sufficiently relevant to warrant a new trial. As noted above, the post-trial discovery revealed the Bonefish restaurant in question was equipped with six security cameras. All parties agree that the cameras could not have captured Plaintiff's fall. Plaintiff, however, maintains that nonetheless, Defendant's failure to review and preserve any video from the day of the incident deprived her of a fair trial because other recorded and potentially relevant evidence was lost.

---

[23]     *Sears, Roebuck, & Co. v. Midcap*, 893 A.2d 542, 552 (Del. 2006).
[24]     *TR Investors, LLC v. Genger*, 2009 WL 4696062, at \*17 (Del. Ch. Dec. 9, 2009).

Plaintiff relies heavily on *Foreman v. Two Farms, Inc.*[25] for the proposition that the lost video footage is relevant even though it would not have shown her fall. The *Foreman* plaintiff slipped and fell on a sidewalk owned and operated by the defendants and alleged defendants were negligent in failing to clear snow and ice off the sidewalk, which caused her to fall.[26] The defendants reviewed and made a copy of surveillance footage facing the sidewalk, but ultimately lost the video sometime afterwards during office renovations.[27] While defendants claimed that the video was irrelevant because plaintiff's fall was obstructed from the camera's view, the Court disagreed and found the video relevant because it would have shown the weather conditions at the time of plaintiff's fall and whether other individuals had trouble walking on the sidewalk.[28] Based on those facts, the *Foreman* court held that a spoliation instruction was warranted.[29]

Here, Plaintiff claims the camera facing the restaurant's mop station is positioned "where one would expect an employee to go if a spill was being cleaned."[30] Plaintiff thus insulates that video potentially could have captured

---

[25]    2018 WL 4846341 (Del. Super. Ct. Oct. 4, 2018).

[26]    *Id.* at *1.

[27]    *Id.* at *1-2.

[28]    *Id.* The Court also noted that the lost video "would show the potential existence or lack of existence of alternative routes of ingress or egress," and either corroborate or refute plaintiff's cell phone picture depicting the sidewalk's condition. *Id.*

[29]    *Id.* at *5.

[30]    Pl.'s Mot. for New Tr. at 8. (D.I. 132).

evidence of a Bonefish employee preparing to clean or returning from cleaning a spill at the time Plaintiff fell. The implicit suggestion, however, relies wholly on speculation. Neither party has presented the Court with witness testimony or any other evidence indicating that a Bonefish employee cleaned a spill shortly before or after Plaintiff's fall. Without any circumstantial or corroborating evidence, Plaintiff fails to properly support her request for a spoliation adverse inference instruction.[31]

Plaintiff further contends that the lost video evidence is relevant to impeach the trial testimony of Mark Ostan, who testified Plaintiff tripped due to her own negligence. Thereafter, Ostan claimed that he went to the manager's office and informed Parsley about the incident. Plaintiff asserts the camera directed at the manager's office would have served to impeach Ostan's testimony by showing that Parsley was not in his office at the time. This argument fails to support the relevance of this purported recording because Parsley himself testified at trial that he was leading Plaintiff to her seat at the time of the fall and the jury was presented with that testimony which served to impeach Ostan.[32] Further, Parsley's location is not

---

[31]  *See Genger*, 2009 WL 4696062, at *17 ("Additionally, to obtain an adverse inference, the aggrieved party must make some showing that the allegedly destroyed evidence existed and supported the aggrieved party's position."); *Beard Research, Inc. v. Kates*, 981 A.2d 1175, 1193 (Del. Ch. 2009) ("To obtain an adverse inference, however, a party must offer more than mere speculation and conjecture[.]").

[32]  Parsley Dep. at 15, 16 (D.I. 56).

relevant to the negligence claim at issue. A video of the manager's office provides no probative evidence as to whether Bonefish's negligence caused the fall.

Finally, Plaintiff raised a concern that ruling in Defendant's favor would incentivize future litigants to evade liability by destroying or declining to preserve video evidence. That is not a concern here, as the video in question here is found to be irrelevant to the disputed issue at trial. Under these circumstances, declining to issue an adverse inference instruction would not serve as an invitation for future litigants to spoliate evidence. While it was certainly not the best practice for Defendant's to have failed to preserve any video evidence here, or respond to discovery in such a fashion, their failure to preserve the surveillance here does not rise to the level warranted to grant a new trial.

In contrast to *Foreman*, Plaintiff alleged Defendant was negligent for failing to clean a slippery substance from the floor of the main dining area, which caused her fall. Because not one of the six surveillance cameras was directed at the main dining area, the unpreserved video would not have shown either Plaintiff's fall or any alleged cause of Plaintiff's fall. Therefore, the probative value of the lost video here is significantly lower than the video in *Foreman*.

For the foregoing reasons, Plaintiff's Renewed Motion for a New Trial is **DENIED**.

IT IS SO ORDERED.

_____
Judge Danielle J. Brennan